**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Roosevelt WOODS,**
**Defendant-Appellant.**

**No. 86–5093.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1987.

Decided March 5, 1987.

William L. Runyon, Jr., Charleston, S.C., on brief for defendant-appellant.

Vinton DeVane Lide, U.S. Atty., Columbia, S.C., (Dale L. DuTremble, Asst. U.S. Atty., Charleston, S.C., on brief) for plaintiff-appellee.

Before HALL and CHAPMAN, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

Robert Roosevelt Woods appeals his convictions on eighteen counts of mail fraud under 18 U.S.C. 1341. These charges arose out of the operation of a United States Department of Agriculture sponsored child feeding program operated at the Wallingford United Presbyterian Church in Charleston, South Carolina. The Appellant was the pastor of the church and responsible for the administration of the program. He was also a member of the South Carolina House of Representatives. Following a lengthy trial, the Appellant was found not guilty on the one forgery count contained in the indictment, and guilty on all of the mail fraud counts. This appeal raises no claim of insufficient evidence to support the convictions, so a lengthy recitation of the facts is unnecessary. The Appellant has raised several exceptions, but the only exception that merits substantial discussion is his claim that blacks were excluded from the jury in violation of *Batson v. Kentucky*, 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We affirm.

## I.

This matter was tried before a statewide jury, selected from the statewide jury wheel that contains the names of individuals living in every section of the state of South Carolina. When prospective jurors received a summons to jury duty, they also received a lengthy questionnaire to be filled out and returned to the clerk of court. This questionnaire was prepared by the joint effort of the United States Attorney's Office and defense counsel and was under the sanction of the district judge. The questionnaire inquired as to the age, address, employment history, political preference, church affiliation, whether the juror attended church regularly, and whether the juror or any close family members had been subject to criminal prosecution. Since the defendant was an ordained minister and also an elected member of the South Carolina General Assembly, the questions about political and religious affiliations were deemed important by both sides. These completed questionnaires were made available to the attorneys prior to the jury selection.

The jury selection and trial of this case occurred in March, 1986. At the beginning of the jury selection process all members of the venire were brought into the courtroom and in the presence of the defendant, defense counsel and government counsel, the court asked general questions about the jurors qualifications to serve. Thereafter the entire venire was removed from the courtroom and the names of individuals on the venire were drawn at random. As each name was drawn, the prospective juror returned to the courtroom and was questioned individually by the court. Following this individual examination, the individual was presented to the parties and the attorneys could then challenge for cause, exercise a peremptory challenge or accept the individual on the petit jury.

At the conclusion of the selection process a petit jury of nine whites and three blacks was seated. There were three alternate jurors selected, and one of these alternates was black. Although *Batson v. Kentucky* did not come down until April 30, 1986,

defense counsel during the selection of the jury objected each time the prosecutor used a peremptory challenge to excuse a black person from service on the petit jury.

The jury returned its guilty verdicts on March 18, 1986, and on March 24, 1986, defendant's trial counsel filed motions for judgment of acquittal and for a new trial. The following day the defendant filed a *pro se* supplemental motion for a new trial based on ineffective assistance of counsel. On May 13, 1986, the trial court allowed defendant's trial counsel to withdraw and substituted the present appellant counsel to represent the defendant. Extensive hearings were held in May, 1986 on the *pro se* motion alleging ineffective assistance of counsel and the motion for a new trial under *Batson v. Kentucky.*

At the post conviction hearings the attorneys and the court were uncertain as to whether *Batson* would be held retroactive. This question was answered on January 13, 1987 by the Supreme Court in *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 which determined that *Batson* should be applied to all cases pending on direct review or not yet final. Therefore *Batson* applies to the present appeal.

At the May 13, 1986 hearing appellant's attorney claimed that the United States Attorney had violated *Batson* in exercising peremptory strikes against four black persons during jury selection. The defense counsel contended that this showing of the use of peremptory challenges against four black prospective jurors was sufficient under *Batson* to state a prima facie case and require the prosecution "to come forward with a neutral explanation for challenging the black jurors." *Batson,* 476 U.S. at ——, 106 S.Ct. at p. 1723.

The trial judge found that the defendant had not made out a prima facie case under *Batson.* He explained that the trial jury contained three black jurors, and of the three alternates, one was black. He found this representation to be in keeping with the racial composition[1] of the State of

South Carolina from which the jury had been drawn. He also pointed out that the first juror seated in the case was black and that the last juror seated was also black. The last juror was seated at a time when the United States Attorney still had an unused peremptory challenge.

The court noted that although he had found that there was no prima facie case presented by the defendant under *Batson,* and that the court and the attorneys felt that *Batson* would not be applied retroactively, he offered the United States Attorney the opportunity to explain his exercise of peremptory challenges as to four blacks and one white. The United States Attorney then gave an explanation of his reasons for challenging each of the jurors. The Appellant conceded in his brief that the reasons given by the United States Attorney were "fairly neutral" as to all of the challenges except the prosecution's second challenge, which was against juror number fifteen, Lloyd K. Dawson, a black from Charleston, South Carolina. The United States Attorney explained this strike by pointing out that Dawson listed himself as non-denominational, but stated that he frequently attended church and visited various churches in the Charleston area. This juror also stated that he had seen some press stories about the case, and the United States Attorney was aware of certain stories in the *Charleston Chronicle* which he considered very unfavorable to the prosecution and highly inflammatory if read by jurors. The *Charleston Chronicle* is a publication primarily distributed among black residents of Charleston County. The United States Attorney felt that this juror may have been exposed to what he considered unfair, inaccurate, inflammatory and racial pre-trial publicity. Since the juror attended various churches in Charleston County, the prosecution felt that he may have been a constituent of the defendant. This juror also stated that a close relative had been convicted of driving under the influence and a relative was a mem-

---

1. Black population of South Carolina is 30.03 percent. U.S. Bureau of Census, general population characteristics P.C. 80–1–B 42, Table 19.

ber of a fraternity known as Omega Phi Psi, an organization with which the prosecution was unfamiliar.

The district court found the reasons stated by the United States Attorney to be a sufficient explanation. The court stated "I think for the record for any appeal I should state upon what he has represented to the court as is his reasons at this point, I would accept them as bonafide reasons other than race as to why he used his peremptory challenges, not only on the four blacks but also on the one white."

## II.

In *Batson v. Kentucky*, the court outlined the requirements for a defendant to prove a prima facie case of discriminatory selection of a petit jury on evidence of a prosecutor's exercise of peremptory challenges, at ——, 106 S.Ct. at p. 1723:

"To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida, supra,* [430 U.S. 482] at 494 [97 S.Ct. 1272 at 1280, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery v. Georgia, supra* [345 U.S. 559] at 562 [73 S.Ct. 891 at 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors."

The court then explained the shifting of the burden and the prosecutor's response to the creation of a prima facie case, as follows:

"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level of justifying exercise of a challenge for cause. See, *McCray v. Abrams,* 750 F.2d [1113] at 1132 [(C.A.2 1984)]; *Booker v. Jabe,* 775 F.2d 762, 773 (C.A. 6 1985), cert. pending 85–1028 [—— U.S. ——, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986)]. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption-or his intuitive judgment-that they would be partial to the defendant because of their shared race."

The court goes on to explain that the prosecutor may not rebut the defendant's case merely by denying that he had a discriminatory motive or that he exercised his challenges in good faith, but the prosecutor must articulate a neutral explanation relating to the particular case to be tried. "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson,* at p. —— -——, 106 S.Ct. at p. 1723–24.

The defendant claims proof of a prima facie case by showing that he is a member of a "cognizable racial group", that the prosecutor exercised four of his five peremptory challenges to excuse venire members of defendant's race and that juror Dawson was excused because he was a black Charleston resident, the *Charleston Chronicle* is a "black" newspaper, which the government contends was biased and unfair in its comments concerning this case, and the government assumed that Dawson read the newspaper because of his race.

The trial judge first found that the defendant had not made out a prima facie case under *Batson,* but the court allowed the United States Attorney to present his explanation of the peremptory challenges used in the jury selection. The judge then found the reasons given by the United States Attorney to be "bonafide reasons other than race as to why he used his peremptory challenges, not only to the four blacks, but also on the one white."

Since the United States Attorney made a showing of his reasons for the exercise of his challenges, we may examine these reasons under *Batson,* and we may leave for another day the question of whether the defendant made out a prima facie case.

Our task is made easier by the defendant's acceptance of the United States Attorney's explanations for the exercising of peremptory challenges against three of the blacks. The defendant now claims that only the challenge to juror Dawson was impermissible because it was an effort to exclude a black from the jury for racially discriminatory reasons.

In deciding that the trial court should determine whether the defendant had established purposeful discrimination in exercising peremptory challenges, the Supreme Court decided that the trial court's determination would largely turn on evaluation of credibility and was entitled to "great deference". *Batson,* fn. 21.

■ Based upon the record we do not find the trial court's findings to be clearly erroneous. The defendant was an elected official from Charleston County and an or-

dained minister of a Presbyterian church in Charleston. The juror Dawson was a resident of Charleston, he may have been a constituent of the defendant, and since he stated he attended various churches in the area, he could have attended the defendant's church. The *Charleston Chronicle* had published a number of articles favorable to the defendant and critical of the prosecution. Certain of these articles were introduced in evidence at the hearing on defendant's *Batson* motion and these articles claim that the prosecution of the defendant was politically motivated. The trial court was also aware of the large amount of pre-trial publicity associated with this case and the criticism that had surrounded the location of the trial. The trial judge also conducted the voir dire examination of individual venire members and had observed the selection process. The judge commented on the fact that the first juror seated was black and the last juror seated was black, even though the prosecution had not exhausted its peremptory challenges. The racial composition of the petit jury, nine whites and three blacks, and the racial composition of the alternates, two whites and one black, closely approximated the racial composition of the district from which the jurors were drawn.

Giving great deference to the trial judge's findings we conclude that they must stand.

### III.

■ The Appellant contends that the trial judge committed error in not attempting to define "reasonable doubt" to the jury in his charge. From a review of the record it appears that trial counsel attempted to entice the trial judge into explaining to the jury the meaning of "reasonable doubt". The trial judge was not born yesterday: he was the trial judge in *United States v. Love,* 767 F.2d 1052 (4th Cir.1985) and was well aware of this circuit's rule against elaborating on the meaning of "reasonable doubt" in jury instructions. The trial judge wisely interrupted jury arguments of two defense counsel when they began to argue

**1488**

to the jury that the judge would define "reasonable doubt" and gave examples of other language they thought the judge would use in his explanation. The trial judge was correct in refusing to elaborate on the definition.

## IV.

Shortly after his conviction the Appellant filed a *pro se* motion for a new trial claiming ineffective assistance of counsel. Since this claim was made prior to the imposition of a sentence, the district court consented to the dismissal of the three trial attorneys, substituted a new attorney and conducted two lengthy days of hearings, including testimony from the three trial attorneys. At the conclusion of these hearings the trial court concluded that there was no merit to this claim. At trial the Appellant was represented by three well known and very able members of the South Carolina Bar. Two of these attorneys were white and one was black. The black was then president of the South Carolina Bar and experienced in criminal proceedings. One of the white attorneys specializes in "civil rights" cases and has had extensive experience in the federal courts. The other attorney is one of the most active trial counsel in the federal courts of South Carolina and appears regularly in our Court of Appeals.

Rarely has a claim of ineffective assistance of counsel been made and answered so quickly and completely, while memories are fresh and all possible witnesses are available. Present Appellant counsel has filed an *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1976) statement certifying that in his opinion there is no merit in this issue. The Appellant petitioned the court for permission to file a *pro se* brief on the issue of ineffective assistance of counsel. This motion was granted and the brief has been received and considered. After a thorough consideration of the record and the *pro se* brief, we find no merit to the claim of ineffective assistance of counsel.

■ The Appellant also contends that he was prejudiced as a result of his *pro se* motion before the trial court seeking a new trial upon the grounds of ineffective assistance of counsel, and that he should be resentenced before another judge who had not heard all of the evidence presented at the post-conviction motion hearing. Appellant seems to be arguing that he was prejudiced by the trial judge hearing the very motion he insisted upon presenting. The thrust of his argument seems to be that he should not have been sentenced by the judge who heard the motion, because evidence of other bad or criminal acts came out during this hearing. However, in *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) the court found that a sentencing judge is not limited to the material compiled and presented in the pre-sentence report. "[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." 438 U.S. at 50, 98 S.Ct. at 2615, *quoting United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

This principle is set forth in 18 U.S.C. § 3577:

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

In the present case the hearing on the appellant's post-conviction motion provided a great deal of information to the court concerning the Appellant, his character, the possible other crimes he may have committed and other information that could be considered by the trial judge in imposing sentence. The unusual circumstance that this came about as a result of the defendant's effort to obtain a new trial does not change the rule that these facts and circumstances may be considered by the sentencing court.

AFFIRMED.