**UNITED STATES of America**

v.

**Grady Dominic CUNNINGHAM.**

**No. Cr–84–203–01–R.**

United States District Court,
M.D. North Carolina,
Rockingham Division.

March 31, 1988.

John A. Dusenbury, Jr., Asheville, N.C., for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Grady Dominic Cunningham was convicted in this court of bank robbery, a violation of 18 U.S.C. § 2113(a), on November 21, 1985. At the time of jury selection defense counsel objected that the prosecutor's use of peremptory challenges was racially motivated. Cunningham is black and five of six of the government's challenges including in the first four were exercised against black jurors. Cunningham challenged the jury selection on appeal and the Fourth Circuit remanded, 814 F.2d 655 (1987), in light of the intervening decisions of the United States Supreme Court in *Batson v. Kentucky,* 476 U.S 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986), and *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

After continuances at the request of counsel, this court held a hearing on March 7, 1988, at which Defendant was allowed to establish his *prima facie* case and the government was given an opportunity to rebut Defendant's contentions, in keeping with *Batson.* Having considered the presentations by both sides and after thoroughly examining the transcript of the jury selection proceedings and the case law resulting from *Batson,* this court finds that the government has not rebutted the Defendant's *prima facie* case [1] and thus its use of its peremptories violated Cunningham's rights under the fifth amendment. Therefore the court grants him a new trial.

## FACTS

Jury selection in this case took place on November 18, 1985. The venire consisted of thirty-eight people, after the original number had been reduced by the selection of another jury earlier that day. Of the first panel of twelve jurors, four were challenged for cause, Defendant used four of his peremptory challenges, and the prosecutor challenged one person, Tanya Harrison, whom the parties agree is black. The record indicates only that Harrison was single, was an office worker at Ciba–Geigy

1. The court believes that Justice Powell's reference to a *prima facie* case in *Batson* denotes the situation where the proponent has introduced evidence sufficient to require the opponent to produce evidence under penalty of losing the case, rather than referring to the stage of the proceedings where the proponent has produced enough evidence to allow the trier of fact to consider his case, but still bears the risk of non-persuasion, regardless of whether his opponent produces evidence. *See* 9 J. Wigmore, *Evidence* §§ 2487, 2494 (Chadbourn rev. 1981).

who sometimes worked for two attorneys, and that she had once been called for jury service in High Point, but did not serve.

Five of the nine persons in the second panel were challenged, including two by the government. Those two were Fedrecia Hauser, at that time a secretary at R.J. Reynolds in Winston–Salem, and Faylene Gill from Greensboro, who worked in the dietary department at Wesley Long Hospital. Both Hauser and Gill are black, neither had apparently ever served on a jury before, and Hauser was married and had a sister who worked for a bank. After the prosecutor had struck those two, defense counsel requested a bench conference at which time he objected to the government's use of its first three challenges against blacks. The court observed at that time that the prosecutor still had peremptories remaining, and that one black juror had been passed and was seated on the jury.

Of the group of five persons comprising the third panel, three were challenged, including Annette Mathes, a black fifth-grade teacher in the Salisbury school system. Mathes, who had sat on a jury in a state criminal matter seven years prior, was the only person on the third panel challenged by the government and defense counsel renewed his objection at another bench conference.

The government's final challenges were used in the fourth round against Lovett Baldwin, a black assembly worker at Black & Decker, and Peggy Welborn, apparently an older white homemaker from Yadkin-ville. Baldwin was single and had sat on a state civil jury previously, while Welborn was married and had never before served. Welborn had some experience with mentally-disturbed children and their psychiatrists, and stated that she respected psychiatrists and psychologists. The prosecutor stated at the hearing on the present matter that Welborn appeared "grandmotherly" and likely to be sympathetic to the Defendant, who intended to assert an insanity defense.

The jury, as seated, was comprised of eleven white jurors and one black juror. The alternate juror was also black but was selected only after both sides had exercised their peremptory challenge. Before the jury was sworn the prosecutor asked the court to note that he had excused a white juror and defense counsel pointed out that the other five challenges were all against blacks.

## DISCUSSION

■ In *Batson,* the Supreme Court established the standard for determining whether the government's use of peremptory challenges violated the Constitution. *Batson* involved a defendant who was tried in state court, and the Supreme Court analyzed the case under the equal protection clause of the fourteenth amendment. The fifth amendment provides equivalent protection against improper jury selection by the United States in federal court. *See United States v. Forbes,* 816 F.2d 1006, 1009 n. 6 (5th Cir.1987). Although *Batson* was decided after Cunningham's trial was completed, in *Griffith* the Supreme Court held that *Batson* was to be applied retroactively to all cases pending on direct appeal at the time it was decided. 479 U.S. at 327–28, 107 S.Ct. at 715–16, 93 L.Ed.2d at 661; *United States v. Woods,* 812 F.2d 1483, 1485 (4th Cir.1987). This case falls within that category.

■ In challenging jury selection the burden is on the defendant to prove the existence of purposeful discrimination by the prosecutor. *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85. However, the defendant "may make out a prima facie case by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose." *Id.* at 94, 106 S.Ct. at 1721, 90 L.Ed.2d at 85–86 (in context of discussion about exclusion from venire), citing *Washington v. Davis,* 426 U.S. 229, 239–42, 96 S.Ct. 2040, 2047–49, 48 L.Ed.2d 597 (1976). Prior to *Batson* a black defendant could only satisfy his initial burden by showing a systematic and pervasive exclusion of blacks from venires or juries across several cases. *See Swain v. Alabama,* 380 U.S. 202, 221–24, 85 S.Ct. 824, 836–38, 13 L.Ed.2d 759 (1965). The Court revised this position in *Batson* and

held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87.

■ The Court set out three requirements for the defendant's *prima facie* case:

(1) The defendant "must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race";

(2) The defendant can rely on the fact, "as to which there can be no dispute," that peremptory challenges make discrimination possible; and

(3) "... [T]he defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88.

The first two elements are easily satisfied. It is undisputed that Cunningham is black, and that five of the six peremptory challenges exercised by the government were against black jurors. In deciding the third and most critical issue, the "court should consider all relevant circumstances." *Id.*

Some of the factors which may be taken into account are the presence of "a 'pattern' of strikes against black jurors included in the particular venire," and "the prosecutor's questions and statements made during voir dire examination and in exercising his challenges." *Id.* However, discretion as to whether the totality of the circumstances establishes a *prima facie* case is left to the court. *Id.*

Applying this analysis to the facts of the present case, the court is satisfied that Defendant has made out his *prima facie* case. The prosecutor's use of five of his six challenges against black jurors constitutes a sufficient "pattern of strikes" to suggest exclusion based on race. The fact that the prosecutor passed one black juror while he still had challenges remaining does not alter this conclusion. Although some courts have pointed out a prosecutor's failure to strike as many blacks as possible in finding the absence of a *prima facie* case, *see United States v. Dennis*, 804 F.2d 1208, 1211 (11th Cir.1986), *cert. denied*, 481 U.S. 1037, 107 S.Ct.1973, 95 L.Ed.2d 814 (1987); *United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987), this court does not believe that inclusion of one or two blacks on a jury necessarily negates a charge of discrimination. The court instead agrees with the more recent statement of the Eleventh Circuit in *United States v. Gordon*, 817 F.2d 1538, 1541 (11th Cir.1987), that *Batson* proscribes exclusion of any juror for discriminatory reasons. *See also United States v. David*, 803 F.2d 1567, 1571 (11th Cir.1986); *Fleming v. Kemp*, 794 F.2d 1478, 1483 (11th Cir.1986) ("nothing in *Batson* compels the district court's conclusion that constitutional guarantees are never abridged if all black jurors but one or two are struck because of their race."); *Forbes*, 816 F.2d at 1011.

The cases cited by the government do not control the court's determination here. Each of those involved a lesser "pattern" of strikes, and circumstances more favorable to the government. For example, in *Dennis* the Eleventh Circuit ruled that the defendant had not established a *prima facie* case. However, the government in that case only struck two black jurors plus a black prospective alternate juror, and the jury as seated included two black jurors. The court implied that the failure to strike all possible blacks and the presence of two blacks on the jury "undercuts any inference of impermissible discrimination that might be argued to arise from the fact that the prosecutor used three of the four peremptory challenges he exercised to strike blacks from the panel." *Dennis*, 804 F.2d at 1211. But using three out of four challenges against blacks where one was an alternate, and retaining two black jurors, is sufficiently different from using five out of six and having only one black on the jury to distinguish *Dennis*, especially since the

Eleventh Circuit also noted that two of the blacks challenged had been victims of burglaries and one had testified for the government. Although the reasons are to be considered only after a finding of a *prima facie* case, the Eleventh Circuit had the benefit of hearing the reasons before rendering its opinion about the *prima facie* case.

Furthermore, the same circuit had previously explicitly stated that *Batson* should be applied stringently, to eliminate and not just minimize racial discrimination in jury selection, *David*, 803 F.2d at 1571, and that circuit has since reiterated that "under *Batson*, the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." *Gordon*, 817 F.2d at 1541.

The other cases mentioned by the government are also distinguishable on their facts. *See, e.g., United States v. Montgomery*, 819 F.2d 847 (8th Cir.1987) (no *prima facie* case where government challenged two out of four blacks in the venire); *United States v. Forbes*, 816 F.2d 1006 (5th Cir.1987) (three of five challenges were against blacks and two black jurors were seated). Moreover, in *Forbes* the Fifth Circuit did not even decide whether defendant stated a *prima facie* case, but instead recognized as sufficient the reasons given by the prosecutor with respect to two of the three black jurors challenged. Significantly, the Fifth Circuit stated that the appellate court has to scrutinize each challenge, *id.* at 1011, but declined to question the striking of the third juror because the defendant did not object at trial when the prosecutor failed to give a reason for it.

Finally, *United States v. Woods*, 812 F.2d 1483 (4th Cir.1987), does not control the court's decision in this case. In *Woods*, the trial court had found an absence of a *prima facie* case, but three black jurors and one black alternate were seated. In addition to the factual distinction the Fourth Circuit did not rule on whether this presented a *prima facie* case, but like the Fifth Circuit in *Forbes* it decided that the

reasons given were sufficient. 812 F.2d at 1487.

In contrast, where the government struck all of the black jurors either for cause or peremptorily the Sixth and Ninth Circuits have found a *prima facie* case. *See United States v. Davis*, 809 F.2d 1194 (6th Cir.), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987) (government struck seven of nine blacks in venire with peremptories and the other two for cause); *United States v. Thompson*, 827 F.2d 1254 (9th Cir.1987) (government challenged all four blacks in venire). The present case falls in between these groups of cases, but the court finds that the statistics and circumstances involved here are sufficient to raise a *prima facie* case.

*United States v. Allen*, 666 F.Supp. 847 (E.D.Va.1987), is instructive on this point. In *Allen* the District Court for the Eastern District of Virginia found that using five of six available challenges against black jurors constitutes a *prima facie* case under *Batson* despite the fact that three black jurors remained on the jury. *See also United States v. Blake*, 819 F.2d 71 (4th Cir.1987) (Fourth Circuit indicated in remanding to the district court that where first five and seven of eight challenges were against blacks the defendant had a *prima facie* case).

■ Once the defendant has established a *prima facie* case "the burden shifts to the ... [government] to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Although the reasons given need not rise to the level of a challenge for cause, *id.; Blake*, 819 F.2d at 73; *Allen*, 666 F.Supp. at 850, they must pertain to the particular case in question and must amount to more than a mere denial of discriminatory intent or an assertion of the prosecutor's good faith. *Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 88; *Blake*, 819 F.2d at 73; *Thompson*, 827 F.2d at 1257; *Allen*, 666 F.Supp. at 851. In short, "the prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Batson*, 476

U.S. at 98 n. 20, 106 S.Ct. at 1723–24 n. 20, 90 L.Ed.2d at 88–89 n. 20 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 [1981]).

At the hearing on this matter the government attempted to rebut the *prima facie* case by having the prosecutor testify about his reasoning. Unquestionably, the prosecutor was at a disadvantage because of the passage of time since the trial. He discussed the numerous factors he ordinarily takes into account, which include age, occupation, marital status, sex, and place of residence among others. The prosecutor admitted that race can sometimes be a factor but denied that it is ever the sole criterion for a challenge. His intention in this case was not to exclude blacks, but to choose the jury that would evaluate the facts of the case without being influenced by sympathy for the Defendant.

In this regard, the prosecutor denied that he believed black jurors are generally more sympathetic toward black defendants than are whites. *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 83 (proscribing challenges based on such assumptions); *see also Forbes,* 816 F.2d at 1009–10; *Thompson,* 827 F.2d at 1257. He supported this assertion by pointing out that he had challenged one white juror because he perceived her to be "grandmotherly" and too sympathetic, while retaining one black juror because she appeared to be a stern and "no nonsense" kind of person. However, the prosecutor was unable to recall any specific reasons for challenging the five black jurors. Although failure to justify each challenge may not be fatal, *United States v. David,* 803 F.2d at 1571, failure to articulate reasons for excusing any of the five black jurors is certainly insufficient under *Batson* to overcome the Defendant's *prima facie* case. The prosecutor's assertions about his general approach are comparable to a mere denial that he had a discriminatory motive or an affirmation of good faith. *See Batson,* 476 U.S. at 97–98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 88 (citing *Alexander v. Louisiana,* 405 U.S. 625,

632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 [1972]).

Again the case law cited by the government does not favor its position because each time a defendant's *prima facie* case has been recognized the prosecutor in that case was able to assert specific reasons for at least some of the challenges. *See Woods,* 812 F.2d 1483 (Fourth Circuit accepted trial court's findings that all four challenges against blacks were for *bona fide* and "fairly neutral" reasons, including possibility that one juror may have attended a defendant-pastor's church); *Forbes,* 816 F.2d 1006 (reasons were given for two of three challenges in forgery case including fact that one of black jurors had a son in legal trouble for writing "hot" checks, and although no reason was given for third challenge, defendant did not object); *United States v. Davis,* 809 F.2d 1194 (Sixth Circuit reviewed the reasons considered by the district court and found them satisfactory). In *Allen,* the court accepted as a reasonable racially-neutral basis "the prosecutor's desire to impanel jurors with the soundest educational and employment records possible." 666 F.Supp. at 852. The court held for the government, despite the *prima facie* case, because it found that the prosecutor's selection of the jury, including his retention of three better-educated and regularly-employed black jurors, was consistent with these reasonable and neutral criteria. *Id.* at 854. The court also noted the prosecutor's attempted explanation based on the countenance and demeanor of the particular jurors struck. *Id.* at 853–54.

In this case, the prosecutor could not remember the bases upon which he struck the five black jurors, and was unable to give any specific explanation based on their countenance or demeanor. The prosecutor's inability to recall his reasoning after more than two years is understandable. However, because *Batson* clearly places the burden upon the government to justify its actions by stating specific legitimate reasons, the effect of the lack of recollection is that the prosecutor has not rebutted the *prima facie* case as a matter of law.

Several courts have recognized the possibility that passage of time will lead to this result. *See, e.g., Thompson,* 827 F.2d at 1261 ("If the district court finds that the passage of time has rendered such a hearing [concerning prosecution's motives] meaningless, it shall vacate defendant's convictions and schedule a new trial."); *Allen,* 666 F.Supp. at 853 ("prosecutor gave a credible explanation, *to the best of his recollection,* of the extent to which his strikes were based upon his perception of jurors' appearance and behavior." [emphasis added]). In fact, one of the arguments against applying *Batson* retroactively is that not only does it allow for substantial time periods to have passed, but it also requires a prosecutor to recall thought patterns that may never have occurred, since *Batson* was not the standard at the time of jury selection. *See Allen v. Hardy,* 478 U.S. 255, 259, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199, 205 (1986) ("prosecutors ... justifiably have relied on the standard of *Swain.*"); *Griffith,* 479 U.S. at 333, 107 S.Ct. at 719, 93 L.Ed.2d at 665 (White, J., dissenting) (same). Nevertheless, under *Batson* the failure to articulate legitimate reasons plainly requires a ruling in favor of the Defendant.

■ Although Defendant has already completed his sentence, and despite the overwhelming evidence at trial against him, the law is clear that where the proceedings have been completed and sentence already imposed, the only remedy is a new trial. *Batson,* 476 U.S. at 100–01, 106 S.Ct. at 1725, 90 L.Ed.2d at 90; *Blake,* 819 F.2d at 73; *United States v. Wilson,* 816 F.2d 421, 423 (8th Cir.1987). Therefore the court vacates Cunningham's conviction and grants him a new trial on the bank robbery charge.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.