869 F.2d 595
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles A. HENRY, a/k/a Chuck Henry, Defendant-Appellant.
 No. 88-5033.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 4, 1988.
Decided: Feb. 21, 1989.
Rehearing and Rehearing In Banc Denied March 16, 1989.
 
 Roger Sandberg Hanson, for appellant.
 Kenneth Davis Bell, Assistant United States Attorney (Thomas J. Ashcraft, United States Attorney, on brief), for appellee.
 Before K.K. HALL and JAMES DICKSON PHILLIPS, Circuit Judges, and DENNIS R. KNAPP, Senior District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal from a narcotics conviction presents challenges to several instructions proffered by the Court to the jury. Finding the contentions of the defendant without merit, we affirm the conviction.
 
 I.
 
 2
 In April 1987 appellant Henry was indicted on charges of conspiracy to unlawfully possess and distribute cocaine in violation of 21 U.S.C. Sec. 846, possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1), and distribution of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). He was convicted by a jury and sentenced to twenty (20) years imprisonment on the first count and to a term of ten years imprisonment on each of the second and third counts to be served concurrently with the sentence imposed on count one. At trial testimony for the government came from Larry Dean Clark who identified the appellant as the source of supply of the cocaine charged in the indictment.
 
 
 3
 The evidence showed that Clark had known Henry since attending high school in California. Clark began selling drugs in 1985 in Western North Carolina with his source of supply being Eddie Franklin. During 1986 Clark contacted Henry and Bob Luter to arrange a cocaine deal. In April 1986 Clark met them along with E. Rodriguez at a hotel in Georgia where Henry suggested that he supply Clark with ten kilograms of cocaine. Later Henry, Luter, Rodriguez, and several other unidentified Latin males delivered seven kilograms of cocaine to Clark's home in Franklin, North Carolina. The price for the cocaine was $32,000 per kilogram. Sometime after the delivery of the cocaine, Clark met Henry at a shopping center in Gainesville, Georgia, where he paid $30,000 to $40,000 for cocaine already sold. Clark met Henry at the same shopping center and made similar payments on three to five other occasions.
 
 
 4
 In July or August Clark returned one and one-half to two and one-half kilograms of cocaine to one of the Latin males who had delivered it to Clark. A total of $150,000 was paid by Clark to Henry for approximately five kilograms of cocaine Clark was able to sell. One of the kilograms Clark acquired from Henry went to Franklin.
 
 
 5
 Clark told Franklin that the cocaine was coming from Florida and that the source was from "out west." Clark also testified that he had other sources for drugs in California and that he was protecting someone from authorities.
 
 
 6
 At trial Eddie Franklin testified that he had an arrangement with Clark wherein Clark would acquire cocaine, Franklin would distribute it and they would split the profits. Franklin had never been told by Clark who his source of supply was nor how many sources he had. Franklin stated that sometime between April and June 1986 he and Clark increased their activities by dealing in several kilogram quantities of cocaine. Franklin recalled that Clark received a large shipment of cocaine while Franklin was at Myrtle Beach, South Carolina. Franklin's telephone records indicated that he was in Myrtle Beach from May 20 through May 22, 1986.
 
 
 7
 Clark and Franklin were corroborated by Henry's American Express records, the records of Eastern Airlines, Avis Rent-A-Car and eight hotels. Analysis of these records demonstrated that Henry flew from Ontario, California to Atlanta, Georgia on May 13, 1986 along with E. Rodriguez and an F. Krasco. For the next three weeks, until June 6, 1986, Henry and others checked in and out of nine hotels and motels in the north Georgia area. Thereafter, Henry returned to Ontario, California.
 
 II.
 
 8
 Henry's contentions on appeal center around three issues. Appellant argues that the court failed properly to instruct the jury on the meaning of reasonable doubt. We find that the district court's instruction was accurate and correct and did not require further elaboration; the court's instruction followed the mandate set forth in U.S. v. Woods, 812 F.2d 1483, 1487 (4th Cir.1987); U.S. v. Love, 767 F.2d 1052, 1060 (4th Cir.1985).
 
 
 9
 Henry contends that the court's instruction concerning testimony of an accomplice was error. Appellant argues that Franklin's testimony at trial regarding his source was exculpatory evidence for Henry, and asserts that the instruction pertaining to the testimony of an accomplice must be in accordance with the principles set forth in Cool v. U.S., 409 U.S. 100 (1972).
 
 
 10
 Upon review of the record, we conclude that there was no evidence which could be called exculpatory as set forth in Cool. Clark consistently stated that Henry was his supplier for the cocaine. Franklin didn't know whether or not Henry supplied the cocaine. At most Franklin's testimony may contradict Clark but clearly does not exculpate Henry. The facts of this case are not unusual. The accomplice instruction given by the court was under the particular facts an acceptable expression of applicable law.
 
 
 11
 Lastly, Henry contends that the jury charge of conspiracy omitted one of the elements of the crime. Appellant argues that the instruction did not include that the overt act must be committed in furtherance of the object of the conspiracy relying on U.S. v. Friedman, 445 F.2d 1076, 1084 (9th Cir.1971), as authority.
 
 
 12
 A review of the Court's instructions convinces us that the court clearly included the alleged deficiency in its definition of an overt act. The court recited:
 
 
 13
 An overt act is any act knowingly committed by one of the conspirators in an effort to effect or accomplish some object or purpose of the conspiracy. The overt act need not be criminal in nature if considered separately and apart from the conspiracy. It may be as innocent as the act of a person walking across the street or using a telephone. It must, however, be an act which follows and tends toward accomplishment of the plan or purpose and must be knowingly done in furtherance of some object or purpose of the conspiracy charged in the indictment.
 
 
 14
 The charge to the jury must be reviewed "as a whole to see if the entire charge delivered a correct interpretation of the law." California v. Brown, 479 U.S. 538, 93 L.Ed.2d 934, 107 S.Ct. 837 (1987).
 
 
 15
 As set forth in U.S. v. Pope, 561 F.2d 663, 670 (6th Cir.1977), to determine the propriety of a jury instruction, the instruction must be viewed in its entirety; a misstatement in one part of the charge does not require reversal if elsewhere in the instruction the correct information is conveyed to the jury in a clear and concise manner. Based on the foregoing conclusions, we deem the charge to be sufficient.
 
 
 16
 Accordingly, we affirm Henry's convictions.
 
 
 17
 AFFIRMED.