46 F.3d 1129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry Cornell ROBINSON, Defendant-Appellant.
 No. 94-5053.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1994.
Decided Jan. 12, 1995.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, District Judge. (CR-93-118-R).
 ARGUED: Thomas Marvin Blaylock, Roanoke, VA, for Appellant. Ruth Elizabeth Plagenhoef, Assistant United States Attorney, Roanoke, VA, for Appellee. ON BRIEF: Robert P. Crouch, Jr., United States Attorney, Gwen Carpenter, Law Intern, Roanoke, VA, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before LUTTIG and WILLIAMS, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Larry Cornell Robinson was convicted of bank robbery under 18 U.S.C. Sec. 2113(d) and of the use and carry of a firearm during a crime of violence under 18 U.S.C. Sec. 924(c)(1). On appeal, Robinson argues that his conviction is a result of mistaken identity and thus that the government adduced insufficient evidence linking Robinson to the crime. He also raises a claim of racial discrimination in the selection of jurors, as well as other procedural and evidentiary claims. Finding more than sufficient evidence to support Robinson's convictions, and finding meritless Robinson's other challenges, we affirm.
 
 I.
 
 2
 On May 27, 1993, an armed robber stole more than $17,000 from a branch of Crestar Bank in Roanoke, Virginia. The robber approached the bank counter, opened up his briefcase, and pointed a gun at the bank teller. He instructed the teller to fill the briefcase with money and threatened to kill her if she refused. The robber at one point cocked his gun as he held it to the teller's face.
 
 
 3
 The bank's surveillance equipment recorded the entire robbery on tape and yielded photographs of the robber at different intervals and angles. In the course of their investigation, the police showed these photographs to Earnest Wilson, a probation surveillance officer familiar with the appellant. Wilson identified the person captured on the videotape as Larry Robinson, whereupon the police obtained an arrest warrant for Robinson's arrest.
 
 
 4
 The police arrested Robinson on June 21, 1993, at a motel in Salem, Virginia. When asked to identify himself, Robinson lied to the police, claiming that his name was Edward Carl Burke and offering several pieces of identification in that name. A consent search of the motel room yielded a blue hat similar to the one worn by the person who robbed Crestar. The police impounded Robinson's car and after obtaining a warrant to search the vehicle, seized a brown briefcase that closely resembled the briefcase used by the person depicted on the bank videotape. The police also obtained a warrant to search Robinson's abandoned apartment, where they found a box of .38 caliber ammunition. The police never recovered the weapon used in the robbery or the stolen money.
 
 
 5
 A jury convicted Robinson of bank robbery and use of a weapon in a crime of violence. Robinson appeals both of these convictions.
 
 II.
 
 6
 Robinson claims on appeal that this is a case of mistaken identity, which essentially is a challenge to the sufficiency of the evidence establishing that he committed the crime. Robinson's main contention is that the inability of four of the six bank tellers who witnessed the crime to identify Robinson as the culprit, combined with the unreliability of those witnesses who did identify Robinson, rendered the evidence against him insufficient as a matter of law to support the convictions.
 
 
 7
 When reviewing challenges based on sufficiency of the evidence, we inquire "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Far from being insufficient as a matter of law, the evidence introduced against Robinson at trial was overwhelming, and his convictions must be affirmed.
 
 
 8
 The jury considered at least eight different facts in evidence, most, if not all, of which alone would have been sufficient to sustain the jury verdict. First, two eyewitnesses to the crime identified Robinson as the robber at trial and both picked him out of a lineup after the robbery. Second, the jury observed photographs of the robbery, developed from the bank surveillance videotape, and compared the person in those pictures to pictures of Robinson taken at the time of his arrest. Third, a probation surveillance officer familiar with Robinson identified Robinson as the man on the videotape. Fourth, the police found a briefcase in Robinson's car that closely matched the briefcase used during the crime. Fifth, the police recovered a blue hat from Robinson's motel room that matched the one worn by the robber. Sixth, the police recovered from Robinson's abandoned apartment .38 caliber ammunition, which matched the weapon believed to have been used in the bank robbery. Seventh, when the police arrested Robinson he was wearing a bracelet strikingly similar to that worn by the person on the videotape. Finally, upon arrest, Robinson provided the police with false identification and identified himself as Edward Carl Burke, the same name he used to purchase a car for cash in New York several days after the bank robbery.
 
 
 9
 While it is true that four bank tellers failed to identify Robinson as the culprit and that several bank tellers' descriptions of the robber taken immediately after the crime did not match Robinson's physical characteristics, the evidence presented to the jury is certainly sufficient to support Robinson's convictions.
 
 III.
 
 10
 Robinson next claims that the prosecution committed a Batson violation when it peremptorily struck one of two potential black jurors from the jury pool. See Batson v. Kentucky, 476 U.S. 79 (1986). The district court determined that the prosecution did not violate Batson in striking a black juror from the jury. Because a district court's findings on the issue of intentional discrimination are findings of fact, "[s]uch findings are entitled to 'great deference' and 'will not be disturbed by this court unless clearly erroneous.' " United States v. Grandison, 885 F.2d 143, 146 (4th Cir.1989) (citations omitted), cert. denied, 495 U.S. 934 (1990).
 
 
 11
 In order to proceed on a Batson claim, a defendant must first establish a prima facie case of racial discrimination. To establish a prima facie case, the defendant must show that "he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." Batson, 476 U.S. at 96 (citation omitted). A defendant is also required to "show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." Id. After "the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Id. at 97. At this point, "the trial court [has] the duty to determine if the defendant has established purposeful discrimination." Id. at 98.
 
 
 12
 In conducting its Batson inquiry, the district court brushed quickly past Batson 's prima facie requirement. After Robinson's counsel indicated that a venireman of Robinson's race had been struck, the district court required the prosecutor to take the stand and offer a race-neutral justification for striking the black venireman. J.A. at 101-02. The prosecutor testified under oath that she struck the black juror because she was a retired minister who might be overly sympathetic to the accused. J.A. at 102. The district court properly found this to be an adequate justification for the peremptory strike, and we find Robinson's claims of pretext unconvincing. See United States v. Lane, 866 F.2d 103, 106 (4th Cir.1989) ("current and past employment" are legitimate race-neutral grounds for peremptory strikes). The prosecution also noted that the other black venireman had not been peremptorily struck and had in fact been selected as a juror. J.A. at 102-03. "[A]lthough not conclusive," the prosecution's decision not to use its peremptory strikes against other black jurors "weighs heavily in support of the district court finding of no discrimination." Lane, 866 F.2d at 106.
 
 
 13
 The government urges on appeal that the district court should not have required the prosecutor to state a race-neutral justification for the strike on defense counsel's bare allegation that a black venireman had been struck. The government correctly notes that "[t]he defendant must present sufficient evidence to make a prima facie showing and cannot merely rest on the fact that a prosecutor challenged a prospective juror of the same race." Id. The government, however, did not object to the district court's determination that a prima facie case had been established, rendering its challenge on appeal reviewable only for plain error, of which there is no showing. Moreover, the government provided a race-neutral justification for its strike, and we have held that "this court will not address the question of whether the defendant established a prima facie showing to satisfy Batson where the prosecutor articulated reasons for his strikes." Id. (citing United States v. Woods, 812 F.2d 1483, 1487 (4th Cir.1987)). If the government believes that a defendant has failed to make a prima facie showing of discrimination, it should timely object and preserve its claim for proper consideration on appeal.
 
 IV.
 
 14
 Robinson raises two further claims on appeal. First, he contends that the district court erred in admitting the brown briefcase, seized from Robinson's car, and the .38 caliber ammunition, seized from Robinson's abandoned apartment, because there was an insufficient nexus between the items sought and the property searched.
 
 
 15
 "[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir.1988), cert. denied, 488 U.S. 1031 (1989); see also United States v. Johnson, 726 F.2d 1018, 1022 (4th Cir.1984) ("Probable cause to conduct a search exists if the known facts and circumstances would justify a reasonably prudent person in concluding that the items sought are connected with the criminal activity and that they will be found in the place to be searched."). It was certainly reasonable for the police to believe that Robinson may have stored the instruments and the fruits of the crime in his car and in his old apartment.
 
 
 16
 Second, Robinson claims that the district court abused its discretion in allowing Earnest Wilson, a probation officer familiar with Robinson, to offer his lay opinion that Robinson was the man depicted on the videotape. Robinson asserts that Wilson's testimony usurped the jurors' function of deciding for themselves whether the man on the tape was Robinson.
 
 
 17
 We reject Robinson's claim. "A lay witness may give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." United States v. Robinson, 804 F.2d 280, 282 (4th Cir.1986). Wilson's repeated contact with Robinson in a variety of circumstances clearly placed him in a better position than the jury to determine whether the gunman depicted in the photographs was in fact Robinson. Moreover, where "the individual in the photograph was wearing a hat and dark glasses," as was the gunman in this case, lay opinion testimony by one familiar with the defendant's appearance is admissible. Id.
 
 CONCLUSION
 
 18
 For the reasons stated herein, we affirm the judgment of the district court.
 
 
 19
 AFFIRMED.