**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5423

DINO GILES,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-94-212-WN)

Argued: May 9, 1996

Decided: July 23, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
NORTON, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William P. Purpura, Baltimore, Maryland, for Appellant.
Bonnie S. Greenberg, Assistant United States Attorney, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dino Giles was convicted in 1995 of eight drug-related offenses including distribution of cocaine and cocaine base, possession with intent to distribute heroin, and conspiracy to possess with intent to distribute cocaine, all under 18 U.S.C. §§ 841 and 846. Giles appeals his convictions on three grounds--that the prosecutor unconstitutionally struck African Americans from the jury, that the evidence was insufficient to support the conspiracy conviction, and that law enforcement officers impermissibly manipulated Giles' sentence. We affirm the judgment of the district court.

I.

With the cooperation of a paid informant, Richard Williams, the government gathered evidence of Giles's drug-related activities between February 1992 and November 1993. Many conversations between Williams and Giles were recorded and later played at trial. Williams purchased drugs from Giles--powdered cocaine on five occasions and cocaine base once. Williams also accompanied Giles on some of his trips to check with various distributors.

When the case went to trial, eight of the forty-two individuals on the jury venire were African Americans. The government used three of its six peremptory strikes to remove African Americans. When defense counsel challenged these strikes as racially motivated, the government offered race-neutral reasons for each of the three. The government withdrew its strike as to one of the three because it had misunderstood one answer to a question. The final jury panel of twelve included three African Americans.

II.

A.

Giles first challenges the prosecutor's use of peremptory strikes to remove two African Americans from the jury. Under Batson v. Kentucky, 476 U.S. 79 (1986), a defendant alleging discriminatory jury strikes must establish a prima facie case of purposeful discrimination. The burden then shifts to the government to supply race-neutral explanations for its strikes, and the defendant has a final opportunity to show that the proffered reasons are pretextual.

The government articulated race-neutral reasons for both the peremptory strikes at issue here. One of the jurors was young--25 years old--and the prosecutor preferred jurors with more life experience to judge the credibility of witnesses. The second African American was struck because she worked in a high crime area, and because she just "glared," without moving or smiling like other members of the venire.

The trial judge, who was able to observe the entire jury selection process as it unfolded, credited the government's explanations as race-neutral and not pretextual. The prosecutor's articulated reason for the first stike was buttressed by the fact that she struck two white venirepersons for their youth as well. The judge concurred in the prosecutor's evaluation of the second struck juror's demeanor, noting that "her posture is one that if I were an attorney, I would take note of it. She is sitting with her head in a permanently cocked position, as though she is not particularly appreciative of anything that is going on in the courtroom." We find no reason to disturb the district court's judgment. Hernandez v. New York, 500 U.S. 352, 363 (1991); United States v. Woods, 812 F.2d 1483, 1487 (4th Cir. 1987).

B.

Giles also alleges that the evidence was insufficient to support his conspiracy conviction. We reject this sufficiency challenge because the evidence, viewed in the light most favorable to the government, could convince a rational jury of guilt beyond a reasonable doubt.

3

Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Banks, 10 F.3d 1044, 1051 (4th Cir. 1993), cert. denied, 114 S.Ct. 1850 (1994). At trial, the government's evidence of a conspiracy included taped conversations between Williams and Giles, and the testimony of Williams. Williams was initially introduced to Giles through one Russell Townes, and Williams' testimony suggested that Townes was associated with Giles in his cocaine distribution. Further, Williams once travelled with Giles to check the needs of various distributors on Cherry Hill, and he saw Giles' list of customers and prices. On one occasion, Williams observed a dealer pay Giles approximately three to four thousand dollars. The fact that Giles met with these distributors and sold them large quantities of drugs for distribution indicated an ongoing conspiracy to supply drugs to street users in Giles' neighborhood.

Finally, when Williams asked Giles in a taped conversation whether Giles was "hooked up" with Anthony Clayton (also known as "Merch"), Giles responded, "I've got 'em back started." Based on this and other evidence, the jury found Giles guilty of conspiracy. Its verdict was supported by the evidence.

C.

Finally, Giles contends that law enforcement officers manipulated his sentence by having an informant purchase more than 50 grams of cocaine base from him to increase his sentence range under the sentencing guidelines. Because Giles is raising this issue for the first time on appeal, we review the sentencing for plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725 (1993).

Giles' sentencing manipulation contention fails under United States v. Jones, 18 F.3d 1145, 1152 (4th Cir. 1994). Giles sold both cocaine powder and cocaine base to his customers, according to Williams' testimony. He willingly sold Williams cocaine base upon request. The government's decision to have Williams purchase cocaine base from Giles was not "outrageous official conduct," nor did it overcome the will or predisposition of the defendant. The district court committed no error, much less plain error, in sentencing Giles in accordance with the full amount of narcotics he sold to Williams.

4

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

5