413 F.2d 1303
 Martin Francis Xavier CASEY, Julio Aton Constanzo Palau,
Antonio Leon Rojas, Jean Baptiste Georges, Rene
Juarez Leon and Rolando Masferrer Rojas,
Appellants,
v.
UNITED STATES of America, Appellee.
 No. 25874.
 United States Court of Appeals Fifth Circuit.
 July 8, 1969.
 
 Harvey St. Jean, Miami, Beach, Fla., Carlos B. Fernandez, Gino P. Negretti, Miami, Fla., for appellants.
 Lloyd G. Bates, Jr., Asst. U.S. Atty., Miami, Fla., for appellee.
 Before WISDOM and CARSWELL, Circuit Judges, and ROBERTS, District judge.
 WISDOM, Circuit Judge:
 
 
 1
 The six defendants were charged in a two-count indictment with conspiring, under 18 U.S.C. 371,[1] to lead a military expedition against a friendly nation, the Republic of Haiti, in violation of 18 U.S.C. 960.[2] They were also charged with conspiring and attempting to export arms, munitions, and implements of war, in violation of the Munitions Control Authority of the President, 22 U.S.C. 1934[3] and regulations (22 C.F.R. 121.1 et seq.) issued thereunder. The defendants were tried together by a jury. The jury found them all guilty.
 
 
 2
 The six defendants present the same primary points on appeal: (1) the trial judge abused his discretion in not allowing them to cross-examine the Government's witnesses as to possible involvement of the Central Intelligence Agency; (2) in ruling on the admission of evidence submitted by the Government, the trial judge committed prejudicial error by commenting to the jury that the Government had established a prima facie case of conspiracy.
 
 
 3
 ( 1) A study of the record shows that the trial court did not abuse its discretion in cross-examination. On direct examination no witness testified as to any activity of CIA or of any other agency of the United States. On cross-examination of government witnesses counsel for the defendants twice asked questions that implied that the United States gave covert support to the defendants' enterprise. On the second occasion the prosecutor, outside of the presence of the jury, moved that the defendants should not be allowed to ask questions implying that the CIA engaged in activities supporting the expedition without first proffering evidence that there was a factual basis for the questions. If not restricted, the questioning would prejudice the Government's case, jeopardize our relations with a friendly nation, and adversely affect our national security. These considerations might still have to yield to constitutional rights of accuseds-- in a case where there is a factual basis for probing into activities of a government agency. Accordingly, the United States attorney suggested to the court that defense counsel should examine the witnesses outside of the presence of the jury. He stated that if the defense laid a foundation for examining into CIA activities, that he would produce a qualified witness who would testify that the CIA had nothing to do with the defendants' expeditionary venture. After listening to extensive argument the trial court ruled that the defendants would not be allowed to ask questions implying CIA connivance without first proffering to the court testimony indicating that the CIA was indeed involved in the defendants' activities. The court made it clear to the defendants that it was not requiring them to know the answers to questions which they might ask; it was simply requiring them, out of the presence of the jury, to establish a predicate for their cross-examination. The court explained to the defendants' counsel:
 
 
 4
 I just mean this: Say for the sake of Mr. Cabeza that you do not know what the answer to some certain question in this area would be if you asked him that. I will let you ask him that out of the presence of the jury but I will not let you ask him that in the presence of the jury, unless you get a favorable answer out of the presence of the jury.
 
 
 5
 Now then, in addition to that, another way you can approach it, if you want to, if you have this as part of your case, is to proffer testimony from some other witness, some different witness which will show these facts. And if you can do that, then it seems to me you have a fair basis for asking other witnesses whether they are involved in something of this kind.
 
 
 6
 This solution preserved the defendants' constitutional right to an extensive cross-examination and at the same time protected the prosecution from having its case prejudiced by the jury drawing unfair inferences having no basis in fact. The solution safeguarded national security and protected the nation from unfair, unwarranted inferences that might have jeopardized our relations with a friendly country.
 
 
 7
 ( 2) The defendants moved for a mistrial on the ground that the trial judge prejudiced the jury by commenting, in ruling on admissibility of certain evidence, that the Government had presented a prima facie proof of conspiracy. The trial judge denied the motion and instructed the jury:
 
 
 8
 Lady and gentlemen of the jury, just before you retired and we were discussing the admissibility of documentary evidence which at that time had been offered, the Court in its remarks indicated that a prima facie case has been shown of conspiracy and the involvement of these defendants in it.
 
 
 9
 Now, by that, all I meant was that a sufficient showing had been made to entitle these documents to be received in the case without any qualifications. I was not, of course, attempting to indicate anything as to the ultimate issues in the case; that is, whether these defendants are guilty as charged. This is a question which would be for you, and you alone, and of course not until all of the evidence of the Government and the defendants, if they put on evidence, is in.
 
 
 10
 I just want to make that perfectly clear, that my remarks had to do with the admissibility of certain evidence and is not a matter that you should consider on the ultimate guilt or innocence of these defendants.
 
 
 11
 We find no prejudicial error here.
 
 
 12
 We have considered all other points raised by the appellants and find that none is meritorious. The judgment is affirmed.
 
 
 
 [1]
 18 U.S.C. 371:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
 
 
 [2]
 18 U.S.C. 960:
 Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for or furnishes the money for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined not more than $3,000 or imprisoned not more than three years, or both.
 
 
 [3]
 22 U.S.C. 1934:
 (a) The President is authorized to control, in furtherance of world peace and the security and foreign policy of the United States, the export and import of arms, ammunition, and implements of war, including technical data relating thereto, other than by a United States Government agency. The President is authorized to designate those articles which shall be considered as arms, ammunition, and implements of war, including technical data relating thereto, for the purposes of this section.
 Registration of manufacturers, exporters, and importers
 (b) As prescribed in regulations issued under this section, every person who engages in the business of manufacturing, exporting, or importing any arms, ammunition, or implements of war, including technical data relating thereto, designated by the President under subsection (a) of this section shall register with the United States Government agency charged with the administration of this section, and, in addition, shall pay a registration fee which shall be prescribed by such regulations. Such regulations shall prohibit the return to the United States for sale in the United States (other than for the Armed Forces of the United States and its allies) of any military firearms or ammunition of United States manufacture furnished to foreign government by the United States under this charter or any other foreign assistance program of the United States, whether or not advanced in value or improved in condition in a foreign country. This prohibition shall not extend to similar firearms that have been so substantially transformed as to become, in effect, articles of foreign manufacture.
 Penalties for violations
 (c) Any person who willfully violates any provision of this section or any rule or regulation issued under this section, or who willfully, in a registration or license application, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $25,000 or imprisoned not more than two years, or both.