899 F.2d 52
 283 U.S.App.D.C. 244
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Antonio J. WHITE, Appellant.
and Consolidated Case No. 88-3083.
 No. 88-3073, 88-3083.
 United States Court of Appeals, District of Columbia Circuit.
 April 4, 1990.
Rehearing and Rehearing En Banc Denied May 31, 1990.
 
 Before RUTH BADUR GINSBURG, SILBERMAN and THOMAS, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 These appeals were considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of counsel. After full review of the cases, the court is satisfied that appropriate disposition of the appeals does not warrant a published opinion. See D.C.Cir.R. 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgments from which these appeals have been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2).
 
 MEMORANDUM
 
 4
 Appellants Antonio White and Orlando Clemente were jointly tried and convicted of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846, and distribution of cocaine, 21 U.S.C. Sec. 841(a), based on White's arranging a drug sale to a Drug Enforcement Agency (DEA) undercover agent, Emile Manara, on September 10 and 11, 1987, and Clemente's presence and suspicious behavior in the vicinity of the negotiations and the sale. White was also convicted of distribution of cocaine based on an unsuccessful transaction on September 9, 1987. A third defendant, Calvin Powell, was convicted of the crimes stemming from the events of September 10 and 11; his appeal, however, has not been consolidated with those of his co-defendants. White and Clemente have challenged their convictions on multiple grounds. Finding no reversible error, we affirm.
 
 Jury Discrimination Challenge
 
 5
 White and Clemente contend first that the prosecution's exercise of its peremptory challenges to strike young, black males denied them the equal protection of the laws guaranteed by the due process clause of the Fifth Amendment. We conclude, however, that the district court correctly dismissed trial counsel's challenge to the prosecution's use of peremptory challenges without requiring an explanation by the government.
 
 
 6
 Under Batson v. Kentucky, 476 U.S. 79, 96 (1986), a defendant establishes a prima facie case of prosecutorial discrimination, and triggers the need for government exegesis, by establishing that (1) the defendant is a member of a cognizable racial group, and the prosecutor has used his peremptory challenges to remove group members from the venire, and (2) the relevant circumstances raise an inference that the prosecutor used his peremptory strikes to exclude the jurors because of their race. Appellants have failed to satisfy the first Batson requirement. The class of young, black males is not a "cognizable racial group." See United States v. Garrison, 849 F.2d 103, 106 (4th Cir.) (age cohort not cognizable group in Batson challenge), cert. denied, 109 S.Ct. 566 (1988); United States v. Dennis, 804 F.2d 1208, 1210 (11th Cir.1986) (black males not cognizable group in Batson challenge), cert. denied, 481 U.S. 1037 (1987); cf. United States v. Greene, 489 F.2d 1145, 1149 (D.C.Cir.1973) (age cohort not distinctive group in statutory fair cross-section challenge), cert. denied, 419 U.S. 977 (1974).
 
 
 7
 Appellants do not raise a Batson challenge based on race alone for good reason. Such a challenge could not meet the second Batson prerequisite, for the prosecution used only three of its seven peremptories, and eleven of the twelve jurors were black. See Dennis, 804 F.2d at 1210-11; see also United States v. Montgomery, 819 F.2d 847, 850-51 (8th Cir.1987) (no inference of discrimination if prosecution fails to exercise all challenges and accepts a jury with blacks).
 
 Exclusion of Informant's Testimony
 
 8
 White's various challenges to the district court's refusal to require testimony by the government informant who introduced White to Manara are also unavailing. White testified, as did his girlfriend and his friend Paul Williams, that White first met the informant in the summer of 1987. White and his girlfriend also testified that the informant repeatedly requested White to supply her with cocaine and paged him often on his radio pager.
 
 
 9
 White had subpoenaed the informant in order to supplement this defense testimony and to support his defense of entrapment. The prosecution moved to quash the subpoena. The district judge ruled that the confidential informant privilege was not applicable because the defense was already aware of the informant's identity. See Rovario v. United States, 353 U.S. 53, 61 (1957). The court permitted defense counsel to conduct, after the prosecution's case, a voir dire of the informant outside the presence of the jury. The judge then granted the motion to quash because "the informant will not give relevant and material testimony in support of the defense." Transcript IV at 358-59, 378.
 
 
 10
 White's reliance on Rovario is misplaced: that case is not applicable once the district court has correctly found, as the court did here, that the defense already knows the informant's identity, and the informant privilege is therefore extinguished. See 353 U.S. at 61.
 
 
 11
 The government did not rely on the informant privilege but sought to deny compulsory process because the witness' testimony was not material and favorable to the defense. We have carefully reviewed the transcript of the voir dire and conclude that the district court did not abuse his discretion in determining that the witness' testimony was not favorable.[1] Even under intense and extensive cross-examination, the informant failed to provide a glimmer of support for White's claims. Her testimony instead comported with Manara's avowal at trial that Walters first met White in early September 1987 and did not pressure him into the drug transaction. White's contention that he was improperly denied compulsory process therefore fails. See United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982) (no constitutional right to compel testimony absent a plausible showing that the testimony "would have been both material and favorable to [the] defense").[2]
 
 Contempt Citation
 
 12
 White further maintains that he was deprived of effective assistance of counsel because the trial judge found his lawyer in contempt, and took her motion to vacate the contempt citation under advisement pending the end of the trial. We find, however, that neither the contempt citation nor the district court's decision to take under advisement trial counsel's motion to vacate the order created a conflict of interest.
 
 
 13
 The threat of a contempt order does not automatically deprive a defendant of effective assistance of counsel. See United States v. Gorman, 393 F.2d 209, 212 (7th Cir.), cert. denied, 393 U.S. 832 (1968); United States v. Bolden, 355 F.2d 453, 457 (7th Cir.1965), cert. denied, 384 U.S. 1012 (1966). The possibility that the judge would vacate his already-issued contempt citation would have had the same effect on counsel as the threat of a future contempt order, which White suggests was also present in this case.
 
 
 14
 White concedes that trial counsel may advance the interests of her client only within the bounds of the district judge's orders and the rules of evidence. See also Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers, 552 F.2d 498, 506 (3d Cir.), cert. denied sub nom. Freedman v. Higginbotham, 434 U.S. 822 (1977). The trial court's finding of contempt was based on defense counsel's repeated failure to heed the court's ruling that counsel could present evidence relating to the informant's alleged role in inducing White to commit the charged offenses only in her case-in-chief. This ruling was well within the trial court's discretion, and, contrary to counsel's assertions, was clearly stated and unambiguous. See Transcript II at 155-57, 162.
 
 
 15
 Sufficiency of the Evidence against Clemente
 
 
 16
 Clemente contends the government did not present sufficient evidence to support his conviction. The evidence against Clemente, although not overwhelming, was sufficient for any rational trier of fact to find guilt beyond a reasonable doubt, if the evidence is considered in the light most favorable to the government and all inferences are drawn in the government's favor. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 17
 Manara testified that, on September 10, 1987, he, White, and Powell were negotiating the deal in a parking lot near Georgia and Piney Branch Avenues. As Powell counted the $30,000 Manara had brought, White became nervous. White told Manara there was a "lookout" in the area and pointed toward Clemente, who was standing nearby. Powell then returned the money and walked over to Clemente. Agent Yout, who was watching the events from several surveillance points, testified that Clemente spoke at length with Powell and White and left them intermittently to make calls on his car phone. After Powell told Manara that Powell's girlfriend, who was to deliver the drugs, had gotten lost on Georgia Avenue, Clemente and Powell drove to Georgia Avenue and walked up and down the street for about twenty minutes.
 
 
 18
 The next day, Yout saw Clemente driving in the vicinity of 14th and Meridian Streets, where Manara and White had arranged to complete the aborted deal of the day before. Clemente stopped on the street and talked to White and Powell briefly. Clemente then continued to drive around the neighborhood, traveling in a suspicious manner, making frequent turns. After White and Powell were arrested, Clemente drove by, pulled up to the intersection of 14th and Meridian and attempted to turn north onto 14th Street and move away from the scene. He was then arrested, and the police confiscated from him a radio pager.
 
 
 19
 "A jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present." See United States v. Cruz-Valdez, 773 F.2d 1541, 1546 (11th Cir.1985) (en banc), cert. denied sub nom. Ariza-Fuentas v. United States, 475 U.S. 1049 (1986). Clemente's presence at the scenes of pre-arranged drug transactions in two different locations on two different days, combined with his interactions with Powell and White and his own suspicious behavior, were enough to support the convictions. See United States v. Morales, 868 F.2d 1562, 1572-74 (11th Cir.1989) (finding sufficient to prove conspiracy evidence that defendant was present in another room of apartment when drug transaction took place, that defendant's girlfriend carried the bag containing the drugs, that defendant drove his car in an evasive manner, that a known dealer was riding in the car, and that defendant had a mobile phone).
 
 Motion for a New Trial
 
 20
 Clemente also argues that the district judge erroneously denied his motion for a new trial based on co-defendant Powell's post-trial affidavit declaring Clemente's innocence. This contention, too, is in vain. Assuming a co-defendant's post-trial statement may be typed "newly discovered" evidence, but see United States v. Offut, 736 F.2d 1199, 1202 (8th Cir.1984); United States v. Diggs, 649 F.2d 731, 740 (9th Cir.), cert. denied, 454 U.S. 970 (1981), a defendant is not entitled to a new trial unless he shows that he diligently tried to obtain the evidence before trial. See United States v. Mangieri, 694 F.2d 1270, 1285 (D.C.Cir.1982). At a minimum, proof of due diligence requires a showing that defendant's counsel contacted his co-defendant's counsel and sought his co-defendant's testimony. See Diggs, 649 F.2d at 740. Clemente has not made this crucial showing here. Moreover, because White testified at trial that Clemente was not involved in the conspiracy, Powell's affidavit was cumulative. See United States v. Johnson, 713 F.2d 654, 662 (11th Cir.1983), cert. denied, 465 U.S. 1030 (1984).
 
 Conclusion
 
 21
 We have carefully considered the other arguments raised by each appellant and find that none of them warrants reversal. Satisfied that White and Clemente were fairly tried, we affirm their convictions.
 
 
 
 [1]
 White also argues that the trial judge should not have conducted the voir dire because the questioning revealed to the informant and the prosecution the details of the defense case. We disagree. Courts commonly use voir dire proceedings to pre-screen sensitive information in order to determine if admission is necessary. See United States v. Sampol, 636 F.2d 621, 665 (D.C.Cir.1980) (citing Casey v. United States, 413 F.2d 1303 (5th Cir.1969), cert. denied, 397 U.S. 1029 (1970))
 
 
 [2]
 Confrontation clause cases stressing the importance of cross-examination of government informants paid on contingency are inapposite when, as in this case, the informant does not testify. Cross-examination is necessary to impeach a witness for bias. See United States v. Bagley, 473 U.S. 667, 676 (1985). If an informant does not testify, impeachment evidence has no value. To the extent White wanted Walters' testimony simply to establish her monetary incentive for him to consummate a drug deal, Walters' testimony was cumulative: Manara testified that Walters was paid for the arrest and would be paid more for a conviction