UNITED STATES of America, Plaintiff-Appellee,

v.

Bobby Roy DENNIS, Sr., Sharon Denise Cohen, Clarence Bobby Jennings, Brenda Jewell Hurley, Defendants-Appellants.

No. 85–3089.

United States Court of Appeals, Eleventh Circuit.

Nov. 24, 1986.

William J. Sheppard, Courtney L. Johnson, Jacksonville, Fla., for Dennis.

Brent D. Shore, Jacksonville, Fla., for Cohen.

Eugene F. Murphy, Jacksonville Beach, Fla., for Jennings.

Howard W. Skinner, Jacksonville, Fla., for Hurley.

M. Alan Ceballos, Asst. U.S. Atty., Jacksonville, Fla., for the U.S.

Before HILL, Circuit Judge, TUTTLE * and HENDERSON,** Senior Circuit Judges.

## ON PETITIONS FOR REHEARING

(Opinion April 14, 1986, 11th Cir.1986, 786 F.2d 1029)

PER CURIAM:

Appellants petition for rehearing with suggestion for rehearing en banc. Having reconsidered the initial opinion, the panel has concluded that the petition for rehearing should be GRANTED in part and DENIED in part. The suggestion for rehearing en banc has not been considered by the full court. After filing of this modified opinion, the petition for rehearing en banc may be properly considered by the full court. Accordingly, the petition for rehearing is denied in every respect but the following: Part VII of the opinion, 786 F.2d 1029, 1048-49 (11th Cir.1986), is stricken in its entirety and the following is substituted in its stead:

* Judge Tuttle was a member of this panel that heard oral argument, but due to illness did not participate in this decision. The petition for rehearing is being decided by a quorum.

** *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

21. Appellants base their claim on the fifth and sixth amendments to the Constitution. Although *Batson* involved a constitutional challenge based on the equal protection clause of the fourteenth amendment, it seems clear that the holding and rationale of that case should also be used to determine similar fifth amend-

## VII. THE GOVERNMENT'S USE OF ITS PEREMPTORY CHALLENGES

The government used peremptory challenges to strike three black males from the jury panel. In each instance, defense counsel requested that the trial court inquire into the government's reasons for striking the prospective jurors to determine whether the prosecutor was exercising his peremptory challenges on the basis of race, in violation of appellants' constitutional rights. Those requests were denied. Two black women were eventually seated on the jury that convicted appellants, who are black.

Appellants claim that the record revealed no legitimate basis for striking the three black males who were removed from the jury panel; indeed, according to appellants, the responses of two of the three at voir dire indicated that they would be less inclined than the average individual to exhibit any particular sympathy toward criminal defendants. Appellants argue that they have thus made out a prima facie case in support of their claim that black males were unconstitutionally excluded from the jury that convicted them, and that the government should now be required to provide a nondiscriminatory explanation for the exercise of the three peremptory challenges it utilized to strike the three black males who were on the venire.

Appellants rely on the recent decision of the Supreme Court in *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in support of their claim.[21] In that case the Court held that, where a defendant is able to make out a prima facie case

ment claims that are raised by defendants who have been tried in federal court. *See, e.g., Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). We are constrained by binding Eleventh Circuit authority, however, to reject appellants' invitation to grant the relief they seek on sixth amendment grounds, should equal protection prove unavailing. *Willis v. Zant*, 720 F.2d 1212, 1219 n. 14 (11th Cir.1983).

The effect of the Supreme Court decision in *Batson v. Kentucky* on our decision in this case was first raised in a petition for rehearing to which we have invited no response. Subsequently, the Supreme Court has held that *Batson*

of unconstitutional discrimination by the prosecutor in the exercise of his peremptory challenges in the defendant's case, the prosecutor should be required by the trial court to offer a neutral explanation for the allegedly discriminatory challenges that is related to the particular case to be tried. The Supreme Court stated that a defendant could establish a prima facie case of purposeful discrimination as follows:

> [T]he defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida*, [430 U.S. 482, 494, 97 S.Ct. 1272, 1275, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia*, [345 U.S. 559, 562, 73 S.Ct. 891 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson v. Kentucky*, —— U.S. at ——, 106 S.Ct. at 1723. In determining whether the defendant has made out a prima facie case of purposeful discrimination, courts are to consider "all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's

questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose." *Id.*

■ In this case, we find it clear that defendants failed to make out a prima facie case of purposeful discrimination.[22] As an initial matter, the relevant "cognizable racial group," for the purposes of our analysis, is the group of blacks generally and not just black males, as appellants urge. The test we apply to determine whether appellants are members of a cognizable racial group under *Batson* is the test applied in *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498, *cited in Batson*, —— U.S. at ——, 106 S.Ct. at 1723. Such a group is "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied." *Castaneda*, 430 U.S. at 494, 97 S.Ct. at 1274. The group of blacks generally clearly qualifies under this definition; appellants have failed to show, however, that black males constitute a distinct, recognizable subclass of individuals who have been singled out for different treatment under the laws not simply as blacks, but as black males. It would therefore be inappropriate for us to narrow the "cognizable racial group," for present purposes, to include only black males and exclude black females.

■ The government utilized only three of the six peremptory challenges it was allowed during the selection of the twelve jurors who decided the case, and one of the two challenges to alternates that it was allowed. The government exercised two of

---

should not be retroactively applied when a conviction has been entered and direct appeals have been exhausted. *Allen v. Hardy*, —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). The Court has yet to determine whether *Batson* is to be applied retroactively to cases pending on direct appeal. *See e.g., Brown v. United States*, —— U.S. ——, 106 S.Ct. 2275, 90 L.Ed.2d 718 (1986) (granting certiorari). The petitioner's appeal in the case at bar falls into that latter category of cases pending on direct appeal at the time *Batson* was rendered. For the reasons set forth in this opinion, we may dispose of appellants' *Batson* claim without awaiting the Supreme Court's further resolution of the retroactivity of *Batson*.

**22.** The Supreme Court in *Batson* clearly contemplated that the determination of whether a prima facie case under *Batson* has been made out will ordinarily, if not always, be made in the first instance by the trial court. A remand to the trial court to make such a determination in this case, however, is unnecessary, as a finding by the trial court on this record that appellant has presented evidence sufficient to raise an inference of purposeful discrimination would constitute reversible error despite the "great deference" that we must accord the trial court's findings in that regard. *Batson*, —— U.S. at —— n. 21, 106 S.Ct. at 1724 n. 21.

the three challenges it exercised when selecting regular members to strike potential jurors who were black, and used the one challenge it chose to exercise when selecting alternate jurors to strike an alternate who was black, but eventually accepted a jury that included among its regular members two blacks. It is thus obvious that the government did not attempt to exclude all blacks, or as many blacks as it could, from the jury. Moreover, the unchallenged presence of two blacks on the jury undercuts any inference of impermissible discrimination that might be argued to arise from the fact that the prosecutor used three of the four peremptory challenges he exercised to strike blacks from the panel of potential jurors and alternates. Appellants' case is not bolstered by the fact that two of the stricken black venirepersons had previously been victims of burglaries or that one of those two had also testified for the government in the past. We thus conclude that all of the relevant facts and circumstances do not raise an inference of purposeful discrimination on the basis of race, and that appellants were not entitled to any inquiry into the prosecutor's reasons for exercising his peremptory challenges as he did.