**UNITED STATES of America**

v.

**Anthony GRANDISON, et al.**

**Crim. No. HM–83–0200.**

United States District Court,
D. Maryland.

May 27, 1988.

744

Juliet Eurich, Asst. U.S. Atty., for plaintiff.

William B. Purpura, Baltimore, Md., for defendants.

Anthony Grandison, Jessup, Md., pro se.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

Defendants Anthony Grandison, Rodney Kelly and Vernon Evans, Jr. were convicted by a jury on November 3, 1983 of one count of conspiracy to violate civil rights resulting in death, in violation of 18 U.S.C. § 241, and one count of witness tampering in violation of 18 U.S.C. § 1512. The Court must now determine, pursuant to the remand orders of the Supreme Court 479 U.S. 1075, 107 S.Ct. 1269, 94 L.Ed.2d 130, and the Court of Appeals for the Fourth Circuit, whether the prosecution violated the Equal Protection Clause of the Fourteenth Amendment by exercising peremptory challenges to potential jury members in a racially discriminatory manner. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

On Friday, January 22, 1988, commencing at 10:00 a.m., the Court held a hearing on the issue of whether defendants had made a *prima facie* showing of purposeful racial discrimination by the government in its use of peremptories. The Court has reviewed and considered the memoranda and sections of trial transcript submitted by the parties, and the arguments of counsel at the hearing. The Court finds that defendants have not established a *prima facie* case. The Court need conduct no

further inquiry to hold that the government did not use its peremptory strikes in violation of the Fourteenth Amendment. The Court will, in a separate order, reinstate the judgments vacated by the Supreme Court.

██ Jury selection, which began on October 3, 1983, was conducted by the process of striking jurors from the box. After an extensive voir dire, which involved the Court's initial screening of venire members for excuses for cause, and individual interviews with each remaining potential juror in chambers, the Court convened the venire in the courtroom. Twelve people then sat in the jury box, and the defense and government alternated in exercising strikes with remaining venire members taking the place of excused jurors. On the first three rounds, the government struck George Braham, a black person, Teresa Freeman, a white person, and Maurice Brogden, a black person. On the fourth round, the government stated that it found the jury panel acceptable. The panel then had three black jurors. The defense then struck a juror, and the government struck, on successive rounds, Winona Palmer, a black person, Mary O'Brien, a white person, Michael Shaw, a white person, Rose Young, a black person, Rudolph Little, a black person, and Patricia White, a black person. The jury as finally composed included ten white people and two black people. Of the six alternates, three were white and three were black. The government had used nine of its ten alloted peremptory strikes,

and had struck six black people and three white people.[1]

Before the jury was sworn, defendant made a motion for mistrial based on the government's alleged consistent use of peremptories to strike black people from petit juries. The Court denied the motion. At the time, *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) dictated that a defendant could show a violation of the Equal Protection Clause only by showing that the prosecution consistently, trial after trial, struck all black people from petit juries. By the time the Court of Appeals for the Fourth Circuit affirmed defendants' convictions on December 23, 1985, the Supreme Court had granted certiorari in *Batson v. Kentucky*, 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985). In *Batson*, the Supreme Court ruled that a defendant could show a violation of the Equal Protection Clause by showing racially discriminatory use of peremptories in his case alone. *Supra*, 476 U.S. at 95, 106 S.Ct. at 1722. In *Griffith, supra*, 107 S.Ct. at 719, the Court ruled that *Batson* applied retroactively to all defendants whose cases were on direct appeal. As Grandison, Evans and Kelly had filed petitions for certiorari after the affirmance of their convictions by the Fourth Circuit, their case fell under the *Griffith* mandate.[2]

██ In the *Batson* case, the Supreme Court established the order of proof to be followed in examining a challenge to the prosecution's use of peremptories. Defendants must first make a *prima facie* case of intentional racial discrimination by the prosecution before the case can proceed.[3]

---

1. Defendants attempt to make an issue of the fact that one of the white jurors struck revealed during voir dire that she was married to a black man. This is, simply put, irrelevant. White women married to black men are not a cognizable racial group for the purposes of the *Batson* analysis. Even if they were, the defendants must show that the government struck members of the same racial group to which they belong. Defendants are not white women married to black men. *See United States v. Dennis*, 804 F.2d 1208, 1210 (11th Cir.1986) (black males not a cognizable racial group).

2. A fourth defendant, Janet Patricia Moore, did not file a petition for *certiorari*. Her case therefore ended with the affirmance of her convic-

tion by the Fourth Circuit, and her conviction is not now before the Court on this issue.

3. Defendants argue that the *prima facie* case which they must present is one which creates an inference of intentional racial discrimination. The government does not make any argument regarding which standard the Court should use to evaluate the *prima facie* case. The Court notes that in Title VII cases, to which the *Batson* opinion specifically refers with respect to the order of proof, the *prima facie* case is not the creation of an inference, but the production of enough evidence to mandate the entry of judgment in defendants' favor if the government fails to produce sufficient evidence to rebut. *Texas Department of Community Affairs v. Bur-*

If defendants make their *prima facie* case, the burden then shifts to the government to explain the non-discriminatory, if such they are, reasons for its actions. *Batson, supra,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23. Defendants, who at all times retain the burden of proving intentional racial discrimination, then have the opportunity to present evidence to show why those reasons are a pretext for discrimination. *Batson, supra,* 476 U.S. at 94 n. 18, 98, 106 S.Ct. at 1721–22 n. 18, 1723.

Defendants can show two of the three elements to establish a *Batson prima facie* case. *Batson, supra,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23. All three defendants are black, and the prosecution struck some black people from the jury. Second, defendants are entitled to rely on the fact that the practice of peremptory challenges permits those who would discriminate to do so. It is on the third element, the combination of the facts and circumstances of this case, that defendants fail to create the inference of purposeful discrimination.

The Supreme Court provided the following guidance as to what creates this third element:

> the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination

and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.

*Batson, supra,* 476 U.S. at 96–97, 106 S.Ct. at 1723. Therefore, the Court must take into account all facts and circumstances surrounding this case to determine if they create an inference that government counsel intentionally and purposefully struck potential jurors solely because they were black.

▌ Having done so, the Court finds that, other than the statistical fact that the government struck six black people and three white people, all of the facts in this case reveal an inference opposite to that of racial discrimination. Government counsel took the time, attention, and care to ensure that it did not discriminate on the basis of race. The Court relies first on the fact that the jury as finally selected had two black jurors, even though the government had a remaining strike. The Court is in agreement with the line of cases that hold that the presence of minority jury members on the jury does not itself mean that the *Batson prima facie* case cannot be made.[4] However, as a practical matter, when the Court is reviewing the circumstances to determine if the government intentionally tried to exclude blacks from the jury, the fact that the government could have excluded more blacks and didn't weighs heavily.[5] Second, the Court relies on the

---

*dine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981); *Flowers v. Crouch–Walker Corporation,* 552 F.2d 1277, 1283 n. 4 (7th Cir.1977). However, as the Court determines that defendants have not satisfied the easier standard of creating an inference, the Court need not resolve this issue.

**4.** *United States v. Cartlidge,* 808 F.2d 1064, 1070 (5th Cir.1987) (prosecution struck four black people from petit jury and one black person from alternate jurors, leaving final jury with eleven whites and three black; *Batson prima facie* case established); *Fleming v. Kemp,* 794 F.2d 1478, 1483 (11th Cir.1986) (colorable claim of *prima facie* case where prosecution had used ten strikes to strike eight out of ten blacks on venire, even though jury sworn had black people); *accord United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986), *on remand,* 662 F.Supp. 244 (N.D.Ga.1987) *affirmed* 844 F.2d

767 (11th Cir.1988) and *United States v. Gordon,* 817 F.2d 1538, 1541 (11th Cir.1987) *vacated in part on rehearing* 836 F.2d 1312 (11th Cir.1988); *United States v. Allen,* 666 F.Supp. 847 (E.D.Va. 1987) (even though three blacks on jury, court found *prima facie* case where government had challenged only blacks).

**5.** In *United States v. Dennis,* the prosecution had used only three of its peremptory challenges, two of them to strike black people, and the jury finally sworn had two black people on it. The Court noted:

> It is thus obvious that the government did not attempt to exclude all blacks, or as many blacks as it could, from the jury. Moreover, the unchallenged presence of two blacks on the jury undercuts any inference of impermissible discrimination ...

804 F.2d 1208, 1210–1 (11th Cir.1986), *cert. denied* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d

fact that the government indicated its acceptance of a petit jury that included three black people. Third, the Court's memory of the events and the Court's review of the sections of the voir dire transcript submitted by the parties indicate that counsel for the government considered each potential juror carefully and thoroughly. When government counsel was concerned that race might be an issue, as was the case with juror Little, it raised the issue with the Court and with opposing counsel, and requested that the Court inquire further. The Court did not see any of the desultory or half-hearted questioning which can indicate the government's intent to strike black people regardless of their answers. Fourth, the government did not use all of its strikes. With one strike remaining, the government passed three times with two black people on the jury. Clearly, the government could have used its remaining strike to lower the percentage of black people on the jury. Fifth, the government did not strike black or white people in any particular pattern. Confronted each time with the choice between striking a white or a black juror, government counsel chose three times to strike a white person, and six times to strike a black person, and several times to strike no one. *United States v. David*, 662 F.Supp. 244, 246 (N.D. Ga.1987), *affirmed* 844 F.2d 767 (11th Cir. 1988). Sixth, the government exercised no strikes at all during the selection of the six alternates, three of whom were black people.[6]

Defendants argue to the Court that the fact that the government struck six blacks and three whites in itself creates a *prima facie* case. The Court agrees that that fact, standing alone, could create a *prima*

*facie* case. However, the Court notes that the *prima facie* case must show intentional, purposeful discrimination on the part of the government. In this case, the Court finds that, statistics notwithstanding, all of the other relevant facts as discussed above, lead to the inference that the government acted in a racially neutral manner. The defendants' concern with the fact that the black representation on the jury panel was 16.6 percent, as opposed to 22.7 percent, the percentage of black people in the population in Maryland, cannot stand. The difference is of one juror only, and as noted above, the government was willing to accept a jury with three black people, or with 25 percent black representation. *"Batson* does not require that the government adhere to a specific mathematical formula in the exercise of its peremptory challenges." *U.S. v. Montgomery*, 819 F.2d 847, 851 (8th Cir.1987).

■ Defendants also argue that, because of the facts of this case, counsel for the government would have reason to wish fewer or no black people on the jury. Both victims were white, and many of the law enforcement officers and other witnesses who testified were white.[7] Further, Grandison referred in a letter which was introduced into evidence in three different ways, to the woman believed to be the intended victim as a "white bitch." Other courts have held information such as this as relevant in determining if defendants can make a *prima facie* case.[8] This Court agrees. However, because the evidence of the proceedings regarding selecting the jury does not reveal any indication that the government acted improperly, regardless of whatever supposed incentive they might have

---

814 (1987). In the *David* case, cited in n. 4, *supra*, the District Court on remand relied on the fact that the prosecutor could have but did not strike all blacks to determine that no *prima facie* case could be established. 662 F.Supp. at 246.

**6.** The defense exercised its peremptory challenge to strike alternate Louis Lomp, a white man.

**7.** As the government notes, close to half of, and all of its principal, witnesses were black people.

**8.** *See United States v. Mathews*, 803 F.2d 325, 332 (7th Cir.1986), *reversed on other grounds* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (Because the key witnesses for both sides were black, the prosecution would have no perceived advantage in striking black people from the jury); *United States ex rel. Kyles v. O'Leary*, 642 F.Supp. 222, 228 (N.D.Ill.1986), *affirmed* 834 F.2d 173 (7th Cir.1987) (prosecution's use of its peremptories to strike all blacks from jury which convicted black defendant of murdering white victim created *prima facie* case).

had to do so, these factors do not create the *prima facie* case.

Because the Court determines that defendants have not made a *prima facie* case of racial discrimination in the use of peremptory strikes, the Court need not require the government to explain its reasons for the strikes.

The Court will incorporate its rulings in a separate Order.