James Willie COCHRAN, Petitioner–Appellee, Cross–Appellant,

v.

Tommy HERRING, Commissioner, Alabama Department of Corrections, Respondent–Appellant, Cross–Appellee.

No. 93–7028.

United States Court of Appeals, Eleventh Circuit.

Jan. 10, 1995.

Before TJOFLAT, Chief Judge, ANDERSON and COX, Circuit Judges.

COX, Circuit Judge:

## INTRODUCTION

James Willie Cochran, an Alabama inmate, was convicted of murder after a trial by jury and sentenced to death. Cochran appealed his conviction and sentence. After exhausting his state remedies, Cochran filed a habeas petition in the United States District Court. The district court granted relief based on two claims: (1) that Cochran's counsel was ineffective at sentencing; and (2) that the prosecution used its peremptory strikes to exclude blacks from the jury in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State appeals, arguing that both claims are procedurally barred and lack merit. Cochran cross-appeals, contending that the district court erred in denying relief on his claims that the state trial court improperly disregarded mitigating evidence at sentencing and that the consideration of a prior conviction during the sentencing phase of his trial violates the Double Jeopardy Clause. Because we affirm the district court's grant of relief on the *Batson* claim, we find it unnecessary to address the other issues.

## I. FACTS AND PROCEDURAL HISTORY

The State's evidence at trial was as follows. Cochran robbed an A & P Grocery Store in Jefferson County, Alabama. Stephen Jerome Ganey, the assistant manager of the store, followed Cochran out of the store. Cochran saw Ganey following him. While running away from the store, Cochran stopped several times and pointed his revolver at Ganey, causing Ganey to momentarily pause in his pursuit of Cochran. The police arrived soon thereafter and virtually surrounded the area around the A & P. Within twenty minutes a gunshot was heard. Although there were no eyewitnesses to the

J. Clayton Crenshaw, Deputy Atty. Gen., Office of the Atty. Gen., Capital Litigation Div., Montgomery, AL, for appellant.

Seamus C. Duffy, Drinker Biddle & Reath, Philadelphia, PA, Kenneth C. Frazier, Wayne, PA, for appellee.

actual murder of Gañey, the police found Cochran within one-half mile of the A & P soon after they heard the gunshot. At the time Cochran was arrested, he was carrying nearly $250 with an A & P band wrapped around it, and he had just discarded a revolver. Ganey's body was later found under a trailer in a nearby mobile home park.

Cochran was tried in 1982 for the murder of Ganey.[1] The venire panel for this trial consisted of forty-two potential jurors, nine of whom were black. The defendant in the case, Cochran, is black, while the victim, Ganey, was white. At the conclusion of voir dire and before the actual striking of jurors began, Cochran's counsel moved to restrict the State from arbitrarily striking blacks from the jury. The motion was denied; however, the court stated that it would be guided by *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), in determining whether the State was appropriately using its peremptory strikes. In selecting the jury for the 1982 trial, the prosecution used seven of its fourteen peremptory challenges to exclude seven of the nine black members of the venire panel. After the jury was selected Cochran's counsel did not object to the manner in which the State used its peremptory strikes. A jury of eleven whites and one black found Cochran guilty of murder, and he was sentenced to death.[2]

Cochran appealed his 1982 conviction and sentence in state court. Cochran never raised the *Batson* claim on direct appeal; however, *Batson* was not decided until late in Cochran's appeal process. In 1984, the Court of Criminal Appeals affirmed Cochran's conviction. *Cochran v. State,* 500 So.2d 1161 (Ala.Crim.App.1984). However, in 1985, the Alabama Supreme Court remanded the case for resentencing. *Cochran v. State,* 500 So.2d 1179 (Ala.1985). The circuit court re-

sentenced Cochran in February 1986. *See Cochran v. State,* 500 So.2d 1188, 1188 (Ala. Crim.App.1986). Soon thereafter, the Court of Criminal Appeals again reviewed the sentencing. Appellate counsel filed Cochran's brief with the Court of Criminal Appeals on April 22, 1986. Eight days later, on April 30, 1986, the Supreme Court decided *Batson.* The Court of Criminal Appeals affirmed Cochran's sentence in May 1986, *id.,* and the Alabama Supreme Court affirmed that decision in November 1986. *Ex parte Cochran,* 500 So.2d 1064 (Ala.1986). The United States Supreme Court denied certiorari in Cochran's case on April 27, 1987. *Cochran v. Alabama,* 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).

In 1987, Cochran filed a petition for post-conviction relief under Ala.R.Crim.P.Temp. 20[3] in Alabama state court, still without making a *Batson* claim. Cochran raised the *Batson* issue for the first time on February 1, 1988, when he filed an amendment to the State petition. The amendment to the petition alleges:

"Petitioner's rights were violated when the State struck all seven blacks from the venire, which acts and results in the petitioner being tried by an all white jury, in violation of *Batson v. Kentucky*—particularly when the Court overruled both an oral and a written motion specifically anticipating an all white jury and specifically requesting the Court to prevent the prosecution from striking without good reason black jurors." [4]

The state circuit court ruled that the *Batson* claim was procedurally barred. However, the court also addressed the merits of the *Batson* claim, noting that the record did not contain any evidence of racial discrimination in the use of peremptory strikes. Specifically, the court stated: " 'The composition of the

1. Ganey was killed in 1976. Cochran's first trial ended in a mistrial. The second trial, which resulted in a conviction, was reversed and remanded for a new trial after the United States Supreme Court overturned Alabama's death penalty statute. Thus, the 1982 trial was Cochran's third trial for Ganey's murder.

2. The jury consisted of 14 people, two of whom were black. The alternates were determined by

lot at the end of the trial and were then excused. One of the two alternate jurors was black.

3. The rule is now codified as Ala.R.Crim.P. 32.

4. *Cochran v. State,* 548 So.2d 1062, 1065 (Ala. Crim.App.) (quoting Cochran's amendment to the petition for post-conviction relief), *cert. denied,* 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989).

jury (black v. white) is not shown in the record. We are unable to discern how many blacks and whites were on the jury. The record does not raise an inference that the state was engaged in purposeful discrimination.' "[5]

Cochran filed an objection to the trial court's findings on the Rule 20 motion, alleging that the trial court had not allowed him to present evidence on the *Batson* issue. Attached to the objection were copies of the jury list and the strike sheets which Cochran had obtained from the State. After the trial court overruled the objection, Cochran appealed. The Court of Criminal Appeals reviewed the jury list and strike sheets and concluded that "we cannot, with any degree of certainty, reach any conclusion as to the number of blacks on the venire, the number of blacks removed by peremptory challenge, or the number of blacks who actually served on the jury." *Cochran v. State*, 548 So.2d 1062, 1067 (Ala.Crim.App.), *cert. denied*, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989). The court held that Cochran was procedurally barred from raising the *Batson* claim in a Rule 20 motion because he had not raised it on direct appeal. *Id.* at 1067–68.

After the Supreme Court denied Cochran's petitions for writ of certiorari, *Cochran v. Alabama*, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989), Cochran filed a 28 U.S.C. § 2254 petition in the United States District Court. At the evidentiary hearing, Cochran presented documentary evidence, consisting of the strike sheets used by the prosecutor at Cochran's trial, as well as the testimony of Cochran's prosecutor and other members of the district attorney's office. The district court found that the evidence tended to show that the district attorney's office maintained an informal policy of striking black jurors because of their race. The court further found that race was a determining factor in the striking of black jurors in Cochran's case. As the State offered no race-neutral reason

for its peremptory strikes, the district court granted Cochran relief on the *Batson* claim.[6]

## II. ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

We find it necessary to address only two issues on appeal. The first issue is whether Cochran's *Batson* claim is procedurally barred from review by the federal courts. The State contends that the *Batson* claim is procedurally barred because the last state court rendering a judgment in Cochran's case clearly and expressly stated that the claim was procedurally barred under Alabama law.

Cochran contends that the district court did not err in addressing the *Batson* claim. Cochran argues that the last state court to render judgment on the *Batson* claim primarily based its decision on federal law. Cochran claims that the state court plainly stated that the application of the alleged procedural default depended on the court's view that the claim lacked merit. Because the discussion of the procedural default was interwoven with federal law, Cochran contends that the procedural default was not an adequate and independent state ground for the decision which bars federal review of the *Batson* claim.

Moreover, Cochran contends that even if the last state court to render judgment on the *Batson* issue clearly and expressly stated that its judgment rested on a state procedural bar, the district court did not err in addressing the *Batson* claim because Alabama courts do not strictly and regularly apply procedural defaults in cases such as Cochran's.

The second issue is whether the district court erred in finding that the prosecution in Cochran's case exercised its peremptory challenges in a racially biased manner in violation of *Batson v. Kentucky*, 476 U.S. 79,

---

5. *Id.* at 1066 (quoting the Alabama circuit court's order).

6. Initially, the district court granted Cochran habeas relief but only on an ineffective assistance of counsel claim. Cochran moved for reconsideration of the *Batson* claim. As the district court

found that Cochran had not been afforded an adequate opportunity to present evidence on the *Batson* claim, the court reconsidered the *Batson* claim after holding an evidentiary hearing and thereafter granted relief on the *Batson* claim as well.

106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State contends that the district court clearly erred in finding a *Batson* violation on the facts in this case. Alabama argues that although the State used seven of its fourteen peremptory challenges to strike seven of the nine blacks on the venire, the statistical evidence alone does not establish a *Batson* violation. Moreover, Alabama contends that the fact that two blacks served on the jury undercuts any inference of impermissible discrimination. However, the State offers no race-neutral reasons for striking seven blacks.

Cochran contends that the district court correctly found that the prosecution in his case violated *Batson*. Cochran supports his contention not only with statistical evidence, but also with the testimony of members of the district attorney's office. Cochran contends that the evidence not only shows a policy of race discrimination in jury selection at the time Cochran was being tried, but also shows actual discrimination in the selection of Cochran's jury.

## III. STANDARDS OF REVIEW

■ The district court's holding that, under the facts of this case, the *Batson* claim is not procedurally barred is a mixed question of law and fact subject to de novo review by this court. *See Tower v. Phillips,* 7 F.3d 206, 210 (11th Cir.1993). The ultimate question of whether Cochran has established purposeful discrimination in violation of *Batson* is a question of fact subject to deferential review. A district court finding of purposeful discrimination in violation of *Batson* will not be overturned unless clearly erroneous. *Hancock v. Hobbs,* 967 F.2d 462, 465 (11th Cir.1992).

## IV. DISCUSSION

### A. The State Procedural Bar

■ The first issue is whether the *Batson* claim is procedurally barred from federal review. A federal court may not reach a federal question on collateral review of a state conviction if the state court's opinion "contains a 'plain statement' that [its] decision rests upon adequate and independent

state grounds." *Harris v. Reed,* 489 U.S. 255, 261, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989) (quoting *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983)) (alteration in original). A state procedural bar constitutes an adequate and independent state ground, thereby precluding federal habeas review, only if the last state court rendering a judgment in the case clearly and expressly states that it rests its judgment on the procedural default. *Id.* at 261–63, 103 S.Ct. at 1042–43. In this case, the district court held that the Court of Criminal Appeals of Alabama did not clearly and expressly rely on the state procedural bar because the state court addressed the merits of the underlying federal claim in deciding the procedural state law question. (R. 1–22 at 11–12.) Therefore, the district court held that it was not barred from addressing the *Batson* claim on collateral review. (*Id.* at 13.) Although we affirm the judgment of the district court, we base our affirmance on other grounds, and therefore offer no opinion regarding whether the Court of Criminal Appeals clearly and expressly relied on the state procedural bar.

■ In order for a state procedural bar to foreclose a federal court from reviewing a federal claim in a § 2254 proceeding, not only must the last state court rendering a judgment in the case comply with the "plain statement" rule, but also the procedural bar must be firmly established and a regularly followed state practice. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991). When a state's "procedural default rule has been only sporadically invoked, the procedural default no longer bars consideration of the issue in federal court." *Messer v. Florida,* 834 F.2d 890, 893 (11th Cir.1987) (citation omitted).

■ The Court of Criminal Appeals held that Cochran's *Batson* claim was procedurally barred because he did not raise the claim on direct appeal. *Cochran,* 548 So.2d at 1068. The State procedural bar precludes federal review of the *Batson* claim only if the State has firmly established and regularly followed this specific procedural bar in cases such as Cochran's. To answer this question,

we therefore must look at whether Alabama courts have consistently barred *Batson* claims because they were not raised on direct appeal in similar cases.

Cases such as Cochran's are unusual because the *Batson* decision came down while the case was on direct review.[7] In such cases, the Alabama courts have not consistently applied a procedural bar to *Batson* claims asserted in state collateral petitions where the defendant had raised a *Swain* objection at trial. The case most factually similar to Cochran's is *Floyd v. State,* 571 So.2d 1221 (Ala.Crim.App.1989). *Floyd* is a case in which *Batson* had been decided following the denial of Floyd's application for a rehearing on direct appeal and while Floyd's petition for certiorari was pending in the United States Supreme Court. The Alabama Court of Criminal Appeals held that Floyd's *Batson* claim was procedurally barred because he had not raised the claim on direct appeal. *Id.* at 1223. The Alabama Supreme Court reversed, holding that Floyd should be allowed to raise a *Batson* claim in a Rule 20 proceeding, even though he had not raised the *Batson* claim on direct appeal, noting that Floyd had raised a *Swain* objection at trial. *Ex parte Floyd,* 571 So.2d 1234, 1235–36 (Ala.1990).

In contrast, *State v. Tarver,* 629 So.2d 14, 18–19 (Ala.Crim.App.1993), the Court of Criminal Appeals held that Tarver was procedurally barred from raising a *Batson* claim in a post-conviction hearing when *Batson* was decided while the case was on direct appeal. The court distinguished *Floyd* because Tarver had not preserved the claim for appellate review by raising a *Swain* objection at the trial level. This case is factually more similar to *Floyd* than *Tarver* because Cochran, of course, did raise a *Swain* objection at trial. *See also Watkins v. State,* 632 So.2d 555, 562–63 (Ala.Crim.App.1992) (noting that the Alabama Supreme Court has often remanded cases for a *Batson* hearing despite various procedural defaults), *cert. quashed,* 632 So.2d 566 (Ala.), *cert. denied,* — U.S. —, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994).

The procedural posture of Cochran's case is unusual. Its characteristics are as follows: The case was tried pre-*Batson,* but the *Batson* issue was preserved because Cochran asserted a *Swain* objection; Cochran did not challenge the selection of the jury while the case was on direct review; *Batson* was decided after Cochran's conviction was affirmed, but while his sentence was still being reviewed by the Court of Criminal appeals; and the *Batson* claim was asserted for the *first* time in a state post-conviction proceeding. As *Floyd* and *Tarver* suggest, Alabama courts have not consistently applied a procedural bar to *Batson* claims in cases like Cochran's. Because the procedural bar has not been consistently applied in such cases, we hold that the procedural bar does not constitute an adequate and independent state ground which bars federal review. There-

---

7. Although Cochran was tried in 1982, his judgment of conviction was not final until 1987, when the Supreme Court denied certiorari from his direct appeal. *Cochran,* 548 So.2d at 1065. *Batson* was decided in April 1986, before Cochran's judgment of conviction was final. Under *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), *Batson* applies retroactively to Cochran's case.

Although Cochran did not initially make a *Batson* challenge to the selection of his jury, Cochran did challenge the selection of his jury at the end of voir dire under the rule of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In cases such as Cochran's, where the trial took place pre-*Batson,* a properly made *Swain* claim made in a pre-trial motion is treated as a timely made *Batson* objection for the purpose of preserving the *Batson* issue for appeal. *Ford v. Georgia,* 498 U.S. 411, 418–25, 111 S.Ct. 850, 855–58, 112 L.Ed.2d 935 (1991). Cochran did not raise the *Batson* claim on direct appeal, even though his appeal was not final until 1987, approximately one year after *Batson* was decided. Cochran raised the *Batson* issue for the first time in an amendment to his state petition for post-conviction relief. The State contends that Cochran could have raised the *Batson* claim on direct appeal by submitting a supplemental brief to the Alabama appellate courts after *Batson* was decided. The Alabama Court of Criminal Appeals held that because Cochran could have raised the *Batson* issue on direct appeal but did not, he was procedurally barred from raising it in a state collateral proceeding. *Cochran,* 548 So.2d at 1068. Because the *Batson* claim could have been raised on direct appeal but was not, the State argues, the claim is procedurally barred under state law, and therefore the district court was precluded from addressing the *Batson* claim in the § 2254 proceeding.

fore, the district court properly addressed the merits of Cochran's *Batson* claim.

## B. The *Batson* Claim

■ The State contends that the district court erred in granting relief because the claim lacks merit. The State argues that the statistical evidence Cochran presented does not establish a prima facie *Batson* violation, and therefore the district court's finding that a *Batson* violation occurred is clearly erroneous. Cochran contends that the district court correctly granted him relief because the evidence, both statistical and testimonial, clearly supports the district court's finding that a *Batson* violation occurred.

The district court held an evidentiary hearing on the *Batson* issue. At the evidentiary hearing, Cochran presented evidence showing that the prosecution used seven of its fourteen peremptory challenges to strike seven of the nine blacks on the forty-two person jury venire.[8] At the evidentiary hearing, the State offered no race-neutral reason for these strikes. We need not decide whether the statistical evidence alone establishes a prima facie *Batson* violation, because there is additional evidence supporting the district court's finding.

Cochran presented evidence that the district attorney's office which prosecuted his case had an informal practice of using peremptory challenges to strike black jurors based, at least in part, on their race. A former prosecutor who worked for the district attorney's office around the time of Cochran's trials testified that the philosophy of the office "was that prospective black jurors at that time were anti-police, anti-estab-

lishment and should not be left on juries, if at all possible." (R. 5 at 16.) He testified that there was a pattern in that office of striking blacks from juries, and that as a prosecutor, he struck black jurors because they were black. (*Id.* at 16–17, 25.) Another former prosecutor for the district attorney's office who served at the time of Cochran's trials testified that "race was a factor as particularly where you had a white victim and a black defendant ... [and] you had police involvement in the case," and that "most of the people in the office were aware of [this], and acted accordingly." (*Id.* at 44.) This former prosecutor indicated that black jurors were struck because they were black.[9]

The prosecutor in Cochran's case [10] testified that at the time of Cochran's trial he believed that black jurors were less reliable for law enforcement than were white jurors, that they were more distrustful of police than were white jurors, that they would be less likely to return a death penalty verdict than would white jurors, and that they would be more likely to identify with a black defendant than would white jurors. (*Id.* at 33–34.) The prosecutor offered no specific reasons for striking any of the seven blacks on the venire in Cochran's 1982 trial. (*Id.* at 38.)

Based on this evidence, the district court found that "there was in the District Attorney's office an informal practice of using peremptory challenges to strike black jurors at least in part on the basis of their race." (R. 1–30 at 2.) The court further found that "at the time of Cochran's 1982 trial, race was at least one of several determining factors typically considered in the prosecution's deci-

---

8. This was Cochran's third trial for Ganey's murder. The first trial ended in a mistrial. The second trial resulted in a conviction, but was later reversed and remanded for a new trial. (R. 1–30 at 2 nn. 2–3.) At Cochran's previous two trials, the prosecution used a total of twenty-four of twenty-six peremptory challenges to strike blacks. This does not account for all of the prosecution's peremptory strikes. A few of the strikes could not be reconstructed at the evidentiary hearing. The court held that the evidence from Cochran's two previous trials was relevant circumstantial evidence in determining what happened at the 1982 trial because the same prosecutor served at all three of Cochran's trials. (*Id.* at 2.)

9. This prosecutor testified that the official policy of the District Attorney's office was that they were not to strike jurors solely on the basis of race, but the District Attorney allowed the deputy district attorneys to select juries in whatever way they felt comfortable. (R. 5 at 48.) The prosecutor indicated that in practice, the prosecutors used race as a factor in selecting juries and struck black jurors because they were black. (*Id.* at 44–45.)

10. The same individual served as prosecutor at all three of Cochran's trials.

sion to exercise peremptory challenges." (*Id.*) Thus, the court found that "in [Cochran's] 1982 trial race was a determining factor in the prosecution's exercise of its peremptory challenges." (*Id.*) Noting that the State failed to give race-neutral reasons for striking black jurors, the court found that *Batson* was violated. The court granted Cochran's habeas petition based on his *Batson* claim. (*Id.* at 2–3.)

■] Under a typical *Batson* analysis, the defendant must establish a prima facie case of racial discrimination. Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. The trial court then determines whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1723–24.[11] Because the State has failed to articulate a race-neutral reason for challenging any of the black jurors, the only required analysis here is to determine whether Cochran has established purposeful discrimination. The State contends that under the statistical evidence of this case, the district court clearly erred in finding a prima facie case of discrimination. The State argues that under factually similar circumstances, this court has held the defendant had not established a prima facie *Batson* claim. Specifically, the State compares the facts in this case to *United States v. Dennis*, 804 F.2d 1208 (11th Cir.1986), *cert. denied*,

481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814, *and cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814, *and cert. denied*, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814, *and cert. denied*, 481 U.S. 1037, 107 S.Ct. 1974, 95 L.Ed.2d 814, *and cert. denied*, 481 U.S. 1037, 107 S.Ct. 1974, 95 L.Ed.2d 814 (1987), and *United States v. Allison*, 908 F.2d 1531 (11th Cir.1990), *cert. denied*, 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 77 (1991).

In *Dennis*, the Government used three out of four peremptory challenges to exclude blacks from the jury and from being alternates. However, the Government did not use all of its peremptory challenges, accepting a jury that contained two blacks. Thus, the Government did not attempt to exclude all blacks from the jury. This court concluded, under all the relevant facts and circumstances of that case, that an inference of purposeful racial discrimination was not raised. *Dennis*, 804 F.2d at 1210–11.

In *Allison*, the Government used three out of six peremptory challenges to strike black jurors. However, the court found that the "unchallenged presence of three blacks on the jury undercuts any inference of impermissible discrimination that might arise simply by the striking of other blacks." *Allison*, 908 F.2d at 1537.

In this case, the State contends that although the prosecutor used seven of fourteen peremptory challenges to strike seven of the nine blacks on the venire, the jury contained

---

**11.** The district court applied a slightly different legal framework in this case. It should be noted that the legal framework applied in this case has not been challenged. The State has only challenged the district court's factual findings. The court's opinion granting Cochran relief on the *Batson* claim does not recite the law governing the case. (*See* R. 1–30.) However, the court's original opinion, issued before the court granted the motion for reconsideration of the *Batson* issue, outlines the legal framework which the court applied in this case. (R. 1–22 at 13.)

In the district court's first opinion on the *Batson* issue, the court noted that analyzing the merits of the *Batson* issue is particularly difficult in this case because *Batson* affects Cochran's case retroactively. The district court stated that ordinarily the trial court reviews a *Batson* claim by determining first whether the defendant has established a prima facie showing of discriminatory strikes by the prosecutor. If a prima facie case is established, the burden shifts to the prose-

cution to come forward with a neutral explanation for challenging black jurors. A reviewing court normally determines whether the trial court erred by failing to require the prosecutor to articulate a race-neutral reason for striking the jurors or by accepting the proffered reasons as rebutting the prima facie case. (*Id.*)

However, the district court stated that this case requires a different type of review because neither the trial court nor the parties anticipated the announcement of the *Batson* decision. Because of this, Cochran did not object to the prosecution's actual peremptory challenges at trial, and the prosecution was not afforded the opportunity to explain its challenges. In this case, the *Batson* claim is being reviewed for the first time in district court on collateral appeal. Because the prosecution offers no post-hoc explanation for striking black jurors, the court held that the success of Cochran's *Batson* claim hinged on whether Cochran could establish a prima facie case of purposeful discrimination. (*Id.*)

two black members, one of whom was an alternate. Because the prosecutor could have struck all of the blacks from the jury but did not, the State argues that under *Allison* and *Dennis,* the unchallenged presence of blacks on the jury undercuts any inference of impermissible discrimination. The State also argues that the statistical evidence presented does not establish a prima facie case, because the venire was twenty-one percent black (nine out of forty-two) and the jury was fourteen percent black (two out of fourteen).

"In deciding whether the defendant has made the requisite showing, the ... court should consider all relevant circumstances." *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723. "Although statistics showing discriminatory impact may in themselves constitute a showing of intentional discrimination, a statistical showing is not the sole means for establishing a prima facie case of discrimination." *United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986) (citation omitted). " '[T]he totality of the relevant facts [may give] rise to an inference of discriminatory purpose.' " *Id.* (quoting *Batson,* 476 U.S. at 94, 106 S.Ct. at 1721.) Therefore, contrary to the State's contention, the statistical evidence is merely one factor which the court examines, and it is not necessarily dispositive.

Moreover, although the seating of blacks on the jury is a significant fact, it does not bar a finding of racial discrimination. *Allison,* 908 F.2d at 1537. "[U]nder *Batson,* the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown." *David,* 803 F.2d at 1571.

In this case, the district court based its decision not only on the statistical evidence in the strike sheets, but also on the testimony of the prosecutor in the case and other members of the district attorney's office. The evidence supports the conclusion that a disproportionate number of blacks were struck from the jury in this case, as well as in Cochran's previous trials. The evidence also supports the conclusion that at the time of Cochran's trial, members of the district attorney's office followed an informal policy of striking black jurors because of their race. Finally, the testimony of the individual who prosecuted Cochran supports the district court's conclusion that race was a determining factor in the exercise of peremptory challenges at Cochran's trial. Notwithstanding the fact that two of the fourteen jurors at the trial were black, the sum of the evidence supports the district court's conclusion that race was a determining factor in the prosecution's exercise of its peremptory challenges at Cochran's 1982 trial. Thus, the district court did not clearly err in concluding that the prosecution impermissibly discriminated against blacks in the selection of the jury at Cochran's trial.

## V.  CONCLUSION

We find that the district court was not precluded from addressing Cochran's *Batson* claim in a federal habeas proceeding because Alabama has not consistently applied a procedural bar to *Batson* claims in cases like Cochran's. Moreover, we find that the district court did not clearly err in finding that the prosecution in this case impermissibly discriminated against blacks in using its peremptory strikes in violation of *Batson.*[12]

**AFFIRMED.**

---

12.  This case was well briefed and well argued by counsel for both parties. The court wishes to express its appreciation.